# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

Jessica Lehman,

Plaintiff,

v.

City of Chicago,

Defendant.

Case No. _____

Judge _____

**FILED**

JUN 18 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:26-cv-07202
Judge Joan H. Lefkow
Magistrate Judge M. David Weisman
Random/Cat 2

Emergency Motion For Temporary Restraining Order With Notice and Preliminary Injunction

Plaintiff Jessica Jamie Lehman, proceeding pro se, moves this Court under Federal Rule of Civil Procedure 65 for a Temporary Restraining Order ("TRO") with notice and a Preliminary Injunction. Because irreparable harm will occur if Plaintiff's current placement expires on **June 26, 2026**, Plaintiff respectfully requests that the Court set a hearing before that date. In support, Plaintiff states as follows:

## I. INTRODUCTION

1. This motion arises from the City of Chicago's ongoing, systemic discrimination against individuals with sensory-based and trauma-based disabilities in its emergency shelter system, and from a specific, imminent threat of irreparable harm: the expiration of Plaintiff's hotel shelter placement on June 26, 2026 - the only housing that is medically safe for her - and the City's complete refusal to engage in the interactive process or respond to her reasonable accommodation request. Under Title II of the ADA, 42 U.S.C. §§ 12131(1)(B), 12132, the City is responsible for ensuring that its programs and services - including those administered through contractors functioning as its instrumentalities, including SGA Youth & Family Services (SGA) - are provided in a nondiscriminatory manner. The ADA's implementing regulations further clarify that a public entity may not, through its methods of administration or use of contractors, subject individuals with disabilities to discrimination. See 28 C.F.R. § 35.130(b) (1)-(3).

2. Just as the State of Illinois could not avoid its ADA and *Olmstead* obligations by delegating long-term care services to nursing homes, *see Colbert v. Pritzker*, 2013 WL 5405656 (N.D. Ill. Sept. 26, 2013), the City cannot avoid liability for discrimination carried out by its delegate agencies. The City retains responsibility for ensuring ADA-compliant, community-based access to shelter services, and may not, under *Olmstead*, administer those services in a manner that places individuals with disabilities at risk of unnecessary institutionalization - including when those services are delivered through delegate agencies such as SGA.

3. On April 28, 2026, after weeks of being denied a reasonable accommodation or any interactive process, Plaintiff was placed, solely on the basis of re-classification as a gender-based violence survivor, in a City-funded confidential hotel-based shelter program

in a City-funded confidential hotel-based shelter program operated by SGA. This placement provided the private, non-congregate, sensory-controlled environment that Plaintiff's treating psychiatrist has documented as medically necessary to prevent psychiatric destabilization. (Ex. A.)

4. On May 29, 2026, SGA issued a retaliatory termination notice – the day after Plaintiff informed SGA staff she intended to request accommodations – which was withdrawn along with her promised 14-day extension only after Plaintiff served an emergency TRO motion on the City's Law Department. (Exhibit G, Complaint #63.)

5. DFSS has refused to participate in the interactive process at all. On June 6, 2026, Plaintiff submitted a formal ADA accommodation request to DFSS (Ex. I), asking for a continued non-congregate hotel placement and requesting that DFSS identify the staff member responsible for processing ADA accommodations. DFSS was asked to respond by June 15, 2026. The City's Law Department and SGA were copied. As of the filing of this motion, DFSS has not responded (Complaint #40–41).

6. Plaintiff's current placement expires on June 26, 2026. The City has offered no extension, no alternative, and no response to her ADA request. If the placement expires, Plaintiff will be forced into homelessness or congregate shelters that are medically contraindicated – causing irreparable psychiatric harm and risking unnecessary institutionalization – in violation of the ADA, Section 504, and the integration mandate of *Olmstead v. L.C.*, 527 U.S. 581 (1999). (Exhibit A, Complaint #7)

7. Immediate injunctive relief is necessary to prevent this harm.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) because this action arises under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in Chicago, Illinois, and Defendant City of Chicago resides in this district.

---

## III. FACTS SUPPORTING IMMEDIATE RELIEF

### A. Plaintiff's Disability and Medically Necessary Accommodations

10. Plaintiff is a 24-year-old autistic transgender woman with Autism Spectrum Disorder, Major Depressive Disorder, Post-Traumatic Stress Disorder, and Borderline Personality Disorder. (Ex. A, Mathewson letter.)

11. Dr. Paula Mathewson, Plaintiff's treating psychiatrist, has documented that congregate shelter settings are medically unsafe for Plaintiff and would predictably result in psychiatric destabilization, including acute anxiety, dissociation, meltdowns, and suicidal ideation. Plaintiff requires a private, non-congregate, sensory-controlled sleeping environment with 24/7 access, use of noise-canceling headphones and phone, predictable transitions, and case management conducted only in quiet, sensory-safe spaces. (Ex. A.)

### B. The City's Systemic Failures and Its Own Admissions

12. The City's 311-based shelter intake system is structurally inaccessible to individuals with sensory and trauma-based disabilities. It provides no way to request a reasonable accommodation, no advance notice of placement details, no written confirmation of offers, and no appeal process. When a service request is reactivated, all accommodation-related information is erased. (Complaint #34.)

13. The City's own Notice of Nondiscrimination (Ex. J) promises: *"Modifications to Policies and Procedures: The City of Chicago will make all reasonable modifications to policies and procedures to ensure that people with disabilities have an equal opportunity to enjoy all of its programs, services and activities. ... Anyone who requires a modification ... should contact the department or agency responsible."* Yet DFSS has no publicly designated staff member who can approve ADA requests, no published process for real-time accommodations, and only a post-hoc grievance procedure. (Complaint #40.)

14. DFSS explicitly admitted to Plaintiff's attorney that its definition of "non-congregate" includes shared rooms and that no private, non-shared rooms were available for Plaintiff. (Ex. C; Complaint #37–39.)

## C. Plaintiff's Placement and the City's Knowledge of Her Disability

15. On April 28, 2026, after the City's repeated failures to accommodate her, Plaintiff was placed in a confidential hotel-based shelter program operated by SGA. This placement met her sensory and trauma needs.

16. On May 12, 2026, Plaintiff provided SGA with Dr. Mathewson's letters (Ex. G). DFSS had already received the core medical information on April 17, 2026, when Attorney

Kyle Voils sent the documentation to the City. By that date, the City had full knowledge of Plaintiff's disability-related needs. (Exhibit C)

17. SGA never provided Plaintiff with an alternative mailing address for her housing applications, despite knowing she needed one for FDDP and Bridge Subsidy paperwork. (Exhibit E)

## D. Retaliatory Termination, Promise of Extension, and Disparate Treatment

18. On May 28, 2026, Plaintiff informed an SGA employee that she intended to seek disability accommodations. The next day, SGA issued a termination notice via text message – while Plaintiff was in a panic attack – citing an alleged "major breach of confidentiality." (Ex. F, G.)

19. Thresholds staff, not Plaintiff, made the address disclosure, and confirmed this directly to SGA on May 29, 2026. (Ex. E)

20. SGA staff orally promised Plaintiff a 14-day extension beyond the 60-day limit prior to May 28th, then withdrew it after she requested accommodations (Ex. H, Warning Letter). On May 28, Plaintiff informed SGA staff that she intended to request disability accommodations (Ex. F). The very next day, SGA issued a retaliatory termination notice (Ex. G). After that termination was withdrawn, SGA refused to honor the previously promised 14-day extension – and has since refused to extend her stay at all – while routinely granting extensions to non-disabled residents, some of whom have stayed over six months. (Complaint #64.) This sequence – promise of extension, notification of accommodation request, termination, then refusal to extend – demonstrates clear retaliation and disparate treatment.

21. SGA routinely extends stays for non-disabled residents – some staying over six months – but denied Plaintiff an extension. This disparate treatment – granting extensions to non-disabled residents while denying one to a disabled resident who requested accommodations – demonstrates retaliation and discrimination. (Complaint #63-64.)

E. The Ignored ADA Request and Total Failure of the Interactive Process

22. On June 6, 2026, Plaintiff faxed a formal ADA accommodation request to DFSS (Ex. 1), seeking a continued non-congregate hotel placement and asking DFSS to identify its ADA decision-maker. The City's Law Department and SGA were copied. DFSS was asked to respond by June 15, 2026. (Complaint #40–41.)

23. DFSS has ignored Plaintiff's ADA request without response. The Law Department has ignored without response both the ADA request and the Offer for Waiver of Rights. SGA has not offered an extension. The placement expires June 26, 2026. This is not a delay – it is a complete refusal to engage in the interactive process, which is itself an ADA violation.

F. Imminent Irreparable Harm

24. If the placement expires, Plaintiff will be forced to re-enter the 311 queue – the same inaccessible process that failed her three times before – or face homelessness and psychiatric destabilization, including suicidal ideation and emergency room visits. She has already suffered two ER visits and a 988 call that triggered mobile-crisis response as a direct result of the City's previous failures. (Complaint #4.)

25. Because DFSS has refused to engage in the interactive process, and because SGA withdrew an extension it routinely grants to non-disabled peers, Plaintiff faces imminent homelessness on June 26 – a date certain – and irreparable harm to her health, safety, and psychiatric stability, for which money damages are inadequate.

## IV. LEGAL STANDARD FOR TRO WITH NOTICE AND PRELIMINARY INJUNCTION

26. The standard for issuing a temporary restraining order ("TRO") with notice is the same as for a preliminary injunction. *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006) (holding that a TRO issued after notice is "procedurally as well as functionally even more like a preliminary injunction than a TRO issued without notice and hearing"). The movant must show: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm absent injunctive relief; and (4) that the balance of equities and the public interest favor injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff is proceeding with notice under Rule 65(a) and will serve this motion on Defendant immediately.

¥ #27 skipped

## V. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

28. Plaintiff is likely to succeed on her claims that:

a. The City and its delegate agency SGA retaliated against her for engaging in protected activity (requesting accommodations, asserting ADA rights) in violation of 42 U.S.C. § 12203(a) and

Section 504 of the Rehabilitation Act. The termination notice was issued the day after Plaintiff informed SGA she intended to request accommodations; the subsequent refusal to extend her stay occurred after the termination was withdrawn and after Plaintiff submitted her formal ADA request. The City's shelter system systemically fails to provide reasonable accommodations and has no functional ADA accommodation process, despite its own Notice of Nondiscrimination promising reasonable modifications (Ex. J).

b. The City failed to provide a reasonable accommodation and continues to do so – including by completely refusing to respond to her June 6 ADA request, thereby refusing to engage in the interactive process at all – in violation of Title II of the ADA and Section 504. Under Seventh Circuit precedent, the interactive process is the mechanism by which a reasonable accommodation is identified. *Beck*, 75 F.3d at 1135; *Rehling*, 207 F.3d at 1015-16. When a party refuses to engage in that process altogether, it cannot claim that no reasonable accommodation was possible. Here, a private, non-congregate hotel placement is a reasonable accommodation – the City already provides it to others – and the City's complete refusal to engage in any process has directly resulted in its failure to provide that accommodation.

c. The City's shelter system systemically fails to provide reasonable accommodations and has no functional ADA accommodation process, despite its own Notice of Nondiscrimination promising reasonable modifications (Ex. J).

29. The retaliatory timing (termination issued the day after Plaintiff requested accommodations; extension withdrawn after accommodation request), the false factual basis (Thresholds staff made the disclosure), the disparate treatment (SGA routinely

extends stays for non-disabled peers but denied Plaintiff), and the City's refusal to respond to her June 6 ADA request all demonstrate a strong likelihood of success.

---

## VI. IRREPARABLE HARM, BALANCE OF EQUITIES, AND PUBLIC INTEREST

30. Irreparable harm is presumed when a defendant's actions threaten a plaintiff's health and safety and violate federal civil rights laws. *See* 42 U.S.C. § 12133; *Olmstead*, 527 U.S. at 600. Plaintiff's psychiatric destabilization, risk of suicide, and forced placement in unsafe congregate settings constitute irreparable harm. Because DFSS has refused to engage in the interactive process, and SGA withdrew an extension it routinely grants to non-disabled peers, Plaintiff faces imminent homelessness on June 26 – a date certain.

31. The balance of equities tips sharply in Plaintiff's favor. The relief requested – maintaining an equivalent non-congregate, sensory-safe hotel room – imposes no burden on the City, which already funds this program. The harm to Plaintiff if the TRO is denied is catastrophic.

32. The public interest strongly favors enforcing the ADA, preventing discrimination, and ensuring that people with disabilities have meaningful access to shelter. The public also has an interest in preventing unnecessary psychiatric crises, emergency room visits, unnecessary institutionalization, and a street discharge; the public costs of which far outweigh that of a hotel room. (Complaint #56)

---

## VII. REQUESTED RELIEF

Plaintiff respectfully requests that the Court:

A. Issue a Temporary Restraining Order With Notice effective immediately, pending a preliminary injunction hearing, ordering Defendant City of Chicago to:

33. Immediately refrain from terminating Plaintiff Jessica Lehman from DFSS-funded shelter services or otherwise removing her from the City's homelessness response system pending a preliminary injunction hearing;

34. Maintain Plaintiff with an ADA-compliant, non-congregate, sensory-safe hotel room as an interim placement, with a private bathroom and 24-hour access, located in the downtown Chicago area, or within one mile of accessible public transit in reasonable proximity to downtown, until further order of this Court.

35. Provide Plaintiff with a written mailing or pickup address for program-related correspondence and housing applications;

36. Provide or designate a quiet, private, sensory-safe meeting location for any required in-person meetings with City services, as a reasonable accommodation.

B. Order that the Temporary Restraining Order shall remain in effect until the Court resolves Plaintiff's forthcoming request for appointment of counsel and sets a schedule for further proceedings on Plaintiff's Motion for Preliminary Injunction.

C. After appointment of counsel and a hearing on the merits, convert the Temporary Restraining Order into a Preliminary Injunction, requiring the City to maintain Plaintiff in an

ADA-compliant, non-congregate, sensory-safe placement for the duration of this litigation, or until she secures permanent housing through the Bridge Subsidy.

D. Retain jurisdiction to enforce this order.

---

## VIII. VERIFICATION

I, Jessica Jamie Lehman, declare under penalty of perjury under the laws of the United States that the facts stated in this motion are true and correct to the best of my knowledge, based on my personal experience and the attached exhibits.

Dated: June 2, 2026

/s/ Jessica Jamie Lehman

Plaintiff, Pro Se

---

Respectfully submitted,

/s/ Jessica Jamie Lehman

Address: Confidential (Sealed Address Sheet Attached Under LR 5.7)

Chicago, IL 60612

Phone: (317) 450-9525

Email: jessica@jessicaj.studio

Plaintiff, Pro Se

---

Attachments (Exhibits, Descriptions Listed In Complaint):

- **Exhibit A – Letter from Dr. Paula Mathewson, MD (April 2, 2026)**

- **Exhibit B – 311 Work Order Summary for Service Request SR26-00636635 (Provided to Plaintiff on April 20, 2026)**

- **Exhibit C – Email Correspondence with Attorney Kyle Voils (April 17–21, 2026)**

- **Exhibit D – City of Chicago Tier II Hospital Discharge Guidelines (September 2025) (Excerpts)**

- **Exhibit E – Plaintiff's "UNSWORN DECLARATION OF JESSICA JAMIE LEHMAN UNDER PENALTY OF PERJURY" Regarding Thresholds Disclosure**

- **Exhibit F – Audio Recording of May 29, 2026 Phone Call with SGA Program Therapist Georganne Struss (Post-Termination Call; Authenticated by Plaintiff):** https://drive.google.com/file/d/1NwviosFqu6Pn_6AwYfZQDg6yBmz8_FVF/view?usp=share_link

- **Exhibit G – Communications with Sianny Munroe (SGA Case Manager)**

- **Exhibit H – SGA Correspondence After Reversed Termination Attempt (June 1–16, 2026)**
  Includes: (1) Warning Letter dated June 1, 2026 (alleging confidentiality breach and failure to check out); (2) Expectation Letter dated June 5, 2026 (establishing rules for

off-site meetings); and (3) In/Out Sheet requirement dated June 12, 2026 (demonstrating Plaintiff's compliance with check-in/out procedures), and additional emails contradicting prior instructions and ignoring disability needs. These documents show inconsistent enforcement, retroactive rule-making, failure to engage in the interactive process, and ongoing retaliation.

- **Exhibit I – Plaintiff's ADA Accommodation Request to DFSS (June 6, 2026) and Fax Confirmation**

- **Exhibit J – City of Chicago Notice of Nondiscrimination and Grievance Procedure (printed from City website on June 13, 2026)**



**ESKENAZI HEALTH**

Eskenazi Health
720 Eskenazi Ave.
Indianapolis, IN 46202
317.880.0000
EskenaziHealth.edu

# EXHIBIT A

To Whom it may concern,                                    4/2/2026

I am writing this supplemental letter on behalf of my client, Jessica Lehman, whom I have treated at the Sandra Eskenazi Mental Health Center since August 14, 2023. This letter is intended to provide additional clinical documentation regarding disability-related functional limitations and medically necessary environmental accommodations relevant to shelter placement, hospital discharge planning, and supportive housing eligibility.

Jessica carries the following psychiatric diagnoses: Autism Spectrum Disorder (ASD), Major Depressive Disorder (MDD), Posttraumatic Stress Disorder (PTSD), and Borderline Personality Disorder (BPD). These conditions significantly impair her functioning across social, occupational, and daily living domains, as previously documented. The following information expands upon specific sensory, mobility, and environmental needs that are medically necessary in a shelter or transitional housing environment to ensure Jessica's safety and psychiatric stability.

**Sensory and Environmental Limitations**
Due to Autism Spectrum Disorder and trauma-related symptoms, Jessica experiences severe sensory overstimulation in crowded, noisy, or unpredictable environments. These episodes can result in acute anxiety, agitation, dissociation, shutdowns, or meltdowns requiring prolonged periods of isolation to recover. For this reason, congregate shelter settings are medically unsafe for Jessica and would predictably result in psychiatric destabilization.

Jessica requires access to a private or sensory-controlled sleeping environment to regulate sensory input, prevent overstimulation, and maintain psychiatric stability. This includes the ability to use noise-canceling headphones, her phone, and related assistive devices at all times for sensory regulation and emergency communication.

Jessica also requires unrestricted access to her sleeping and living space, or another sensory-safe equivalent (such as a quiet room) as her sleep schedule is significantly impacted by MDD and may not align with standard curfew or lockout times. Denial of access to her room or an equivalent space during periods of dysregulation or fatigue would exacerbate symptoms and impair her ability to function.

**Need for Predictable Transitions**
Jessica's ASD and trauma history make sudden environmental changes medically destabilizing. Unpredictable transitions can trigger sensory overload, emotional dysregulation, and depressive symptoms. For this reason, predictable transitions and

# EXHIBIT A

advance notice of any placement changes are medically necessary to maintain her psychiatric stability.

**Clinical Recommendation**
Based on the above functional limitations, it is my clinical opinion that Jessica requires:
- Placement in a non-congregate, private, or sensory-controlled environment
- Disability-related accommodations for mobility, sensory regulation, and psychiatric stability
- Housing located near accessible public transit
- Limited in-person case management requirements
- Access to assistive devices for sensory regulation
- Predictable transitions and advance notice of environmental changes

These accommodations are medically necessary to prevent psychiatric deterioration, reduce risk of crisis, and ensure Jessica's ability to safely access shelter and housing services.

Please feel free to contact me if further information is needed.

Thank you,

Dr. Paula Mathewson, MD
Psychiatrist – Mood Clinic
317-880-8491

## EXHIBIT B



# EXHIBIT C

**From:** **Kyle Voils** kyle@chicagohomeless.org 📎
**Subject:** Re: Incorrect Congregate Routing and 311 Re-Activation – Request for DFSS Confirmation
**Date:** April 20, 2026 at 4:38 PM
**To:** Jessica Lehman jessica.j.lehman@icloud.com



Hi Jessica,

I heard back from DFSS. They said that the room that you were offered today was "non-congregate" but shared with another person. Apparently their conception of "non-congregate" does not mean a private individual room, which I know does not track with our common understanding of "non-congregate." I am sorry that I do not have better news to share with you.

I asked if there were private, non-shared room options available that could accommodate your needs based on your disabilities and experiences with gender-based violence, and they said that there are no non-shared rooms available at this time. They said that while the shared room from today is no longer available, they will continue to check the other two "non-congregate" shelters and that you would be a priority for being placed there. Based on your experience today, though, I cannot guarantee that any placement that they offer to you at another "non-congregate" shelter will be in a private room not shared with another person.

At this point, I think it would make sense for me to share this experience with Lauren and Equip for Equality, as I think it is relevant to the reasonable accommodation considerations that you were discussing with them. Do I have your permission to share this information with them?

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct: 312.973.6106** | **Main: 312.641.4140**
**Law Project of the Chicago Coalition to End Homelessness**




Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

# EXHIBIT C

**From:** **Jessica Lehman** jessica.j.lehman@icloud.com
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness
**Date:** April 20, 2026 at 11:08 AM
**To:** Kyle Voils kyle@chicagohomeless.org

Hey Kyle,

I have not received any communications yet from Chicago DFSS, nor had an opportunity to update my pickup address. Please keep me posted as things develop!

- Jessica Lehman (she/her)
(317) 450-9525

On Apr 20, 2026, at 10:51 AM, Kyle Voils <kyle@chicagohomeless.org> wrote:

Good morning, Jessica,

I was told just a few minutes ago that a non-congregate space has come available and that you are being placed there. I just wanted to check in and see if you have received any communication regarding that placement this morning?

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**





Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 5:18 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Jessica!

Thanks for talking with me just a bit ago. I am really sorry for the hardships that you have endured trying to get shelter here in Chicago. As we discussed, we are not able to provide legal representation to you currently. However, after our call and just

# EXHIBIT C

able to provide legal representation to you currently. However, after our call and just before the close of business I emailed a contact at DFSS requesting assistance with getting you a non-congregate emergency shelter placement. With your permission, I also shared that you need a non-congregate placement because you are a person with disabilities including autism and a survivor of gender-based violence. I also flagged your SR number and phone number for them, and clarified that the pickup address associated with your SR number would need to be updated if you were to be referred and have a pickup. They may contact you directly, but if they contact me with information about a placement, I will contact you promptly in turn.

You and I also discussed that I had been in touch with another agency who had a possible apartment referral through the Chicago Low Income Housing Trust Fund program. You indicated that you did not want me to connect you with that agency for that referral because you have another promising lead for being connected to housing with a subsidy after your emergency situation. You also clarified for me that you are not currently receiving SSI. Just for your reference, I want to let you know that if you were connected to that apartment that I mentioned, to qualify you would have to provide documents including a photo ID, a social security card, birth certificate, proof of income (like paystubs or an SSI award letter), and your last 4-6 bank statements. Again, I know that you do not want me to take any action related to that connection, but I just wanted to be sure that I shared with you some of the information that I was able to gather after talking with Lauren, just so you are in the loop about what I learned.

I want to express again that I am very sorry for the negative experiences you've had trying to access shelter here in Chicago. I will be sure to follow up with any additional information that I learn.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct: 312.973.6106 | Main: 312.641.4140**
**Law Project of the Chicago Coalition to End Homelessness**





Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is

# EXHIBIT C

prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 4:27 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Jessica!

Yes, I am able to give you a call in just a minute. I will be calling from 312-973-6106.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct: 312.973.6106** | **Main: 312.641.4140**
**Law Project of the Chicago Coalition to End Homelessness**





**Housing is a human right.** Chicago Coalition to end Homelessness

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Friday, April 17, 2026 4:17 PM
**To:** Kyle Voils <kyle@chicagohomeless.org>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Kyle,

Thank you so much for agreeing to help. I know it's late in the work day, but I'd greatly appreciate if you could try to give me a call or text at (317) 450-9525 before the end of the workday if at all possible! **Lauren said you might have some emergency ideas to help me get through the weekend.**

I'm dealing with a gap in sensory safe shelter for this weekend as a 23-year-old autistic transgender woman. I've attached to this reply all relevant documents, including:
1. My Ready-To-Go Legal Memorandum and Case Analysis
2. My documents including letters from my psychiatrist saying why traditional shelters are unsafe for me especially with sensory.
3. Evidence of my work as a Legal Researcher helping spark the Orr v. Trump case, helping demonstrate why I cannot return safely to Indiana.

Thanks so much,
Jessica Lehman (she/her)

# EXHIBIT C

On Apr 17, 2026, at 4:11 PM, Lauren Galloway <LaurenG@equipforequality.org> wrote:

Hi Jessica,

It was nice talking with you today!  As we discussed, I wanted to connect you with Kyle Voils with the Chicago Coalition to End Homelessness. Kyle is great and may be able to offer some additional support regarding your immediate need for shelter.

We thought it might be easiest for the two of you to connect directly, and I've CC'ed Kyle here so that the two of you can coordinate follow up.

Wishing you the very best,

Lauren

Lauren Galloway
Staff Attorney
Illinois ADA Project, Manager
Equip for Equality, Inc.
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602

The information contained in this email message and in any attachments constitutes confidential information that belongs to Equip for Equality, Inc. This email and attachments may also contain attorney work product or information protected by the attorney-client privilege or other privileges. This information is intended only for the use of the individual or entity to which it is directed. If you are not the intended recipient, you are hereby notified that any disclosure or reliance on this information is prohibited. If you have received this message in error, please notify us at 800-537-2632 (voice) or 800-610-2779 (TTY). Thank you.

# EXHIBIT C



**From: Jessica Lehman** jessica.j.lehman@icloud.com
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness
**Date:** April 20, 2026 at 11:08 AM
**To:** Kyle Voils kyle@chicagohomeless.org

Hey Kyle,

I have not received any communications yet from Chicago DFSS, nor had an opportunity to update my pickup address. Please keep me posted as things develop!

- Jessica Lehman (she/her)
(317) 450-9525

> On Apr 20, 2026, at 10:51 AM, Kyle Voils <kyle@chicagohomeless.org> wrote:
>
> Good morning, Jessica,
>
> I was told just a few minutes ago that a non-congregate space has come available and that you are being placed there. I just wanted to check in and see if you have received any communication regarding that placement this morning?
>
> Sincerely,
>
> Kyle
>
> **Kyle Voils** | Senior Attorney
> he/him/his *(Why do pronouns matter?)*
> **Direct:** 312.973.6106 | **Main:** 312.641.4140
> **Law Project of the Chicago Coalition to End Homelessness**





Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 5:18 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Jessica!

Thanks for talking with me just a bit ago. I am really sorry for the hardships that you have endured trying to get shelter here in Chicago. As we discussed, we are not able to provide legal representation to you currently. However, after our call and just

# EXHIBIT C

~~able to provide legal representation to you currently. However, after our call and just~~ before the close of business I emailed a contact at DFSS requesting assistance with getting you a non-congregate emergency shelter placement. With your permission, I also shared that you need a non-congregate placement because you are a person with disabilities including autism and a survivor of gender-based violence. I also flagged your SR number and phone number for them, and clarified that the pickup address associated with your SR number would need to be updated if you were to be referred and have a pickup. They may contact you directly, but if they contact me with information about a placement, I will contact you promptly in turn.

You and I also discussed that I had been in touch with another agency who had a possible apartment referral through the Chicago Low Income Housing Trust Fund program. You indicated that you did not want me to connect you with that agency for that referral because you have another promising lead for being connected to housing with a subsidy after your emergency situation.  You also clarified for me that you are not currently receiving SSI. Just for your reference, I want to let you know that if you were connected to that apartment that I mentioned, to qualify you would have to provide documents including a photo ID, a social security card, birth certificate, proof of income (like paystubs or an SSI award letter), and your last 4-6 bank statements. Again, I know that you do not want me to take any action related to that connection, but I just wanted to be sure that I shared with you some of the information that I was able to gather after talking with Lauren, just so you are in the loop about what I learned.

I want to express again that I am very sorry for the negative experiences you've had trying to access shelter here in Chicago. I will be sure to follow up with any additional information that I learn.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his (*Why do pronouns matter?*)
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**





Housing is a human right.

Chicago Coalition to end Homelessness

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is

# EXHIBIT C

prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 4:27 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Jessica!

Yes, I am able to give you a call in just a minute. I will be calling from 312-973-6106.

Sincerely,

Kyle


**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**





Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Friday, April 17, 2026 4:17 PM
**To:** Kyle Voils <kyle@chicagohomeless.org>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Kyle,

Thank you so much for agreeing to help. I know it's late in the work day, but I'd greatly appreciate if you could try to give me a call or text at (317) 450-9525 before the end of the workday if at all possible! **Lauren said you might have some emergency ideas to help me get through the weekend.**

I'm dealing with a gap in sensory safe shelter for this weekend as a 23-year-old autistic transgender woman. I've attached to this reply all relevant documents, including:
1. My Ready-To-Go Legal Memorandum and Case Analysis
2. My documents including letters from my psychiatrist saying why traditional shelters are unsafe for me especially with sensory.
3. Evidence of my work as a Legal Researcher helping spark the Orr v. Trump case, helping demonstrate why I cannot return safely to Indiana.

Thanks so much,
Jessica Lehman (she/her)

# EXHIBIT C

On Apr 17, 2026, at 4:11 PM, Lauren Galloway <LaurenG@equipforequality.org> wrote:

Hi Jessica,

It was nice talking with you today!  As we discussed, I wanted to connect you with Kyle Voils with the Chicago Coalition to End Homelessness. Kyle is great and may be able to offer some additional support regarding your immediate need for shelter.

We thought it might be easiest for the two of you to connect directly, and I've CC'ed Kyle here so that the two of you can coordinate follow up.

Wishing you the very best,

Lauren

Lauren Galloway
Staff Attorney
Illinois ADA Project, Manager
Equip for Equality, Inc.
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602

The information contained in this email message and in any attachments constitutes confidential information that belongs to Equip for Equality, Inc. This email and attachments may also contain attorney work product or information protected by the attorney-client privilege or other privileges. This information is intended only for the use of the individual or entity to which it is directed. If you are not the intended recipient, you are hereby notified that any disclosure or reliance on this information is prohibited. If you have received this message in error, please notify us at 800-537-2632 (voice) or 800-610-2779 (TTY). Thank you.

# EXHIBIT C

**From:** Kyle Voils kyle@chicagohomeless.org 📎
**Subject:** Re: Incorrect Congregate Routing and 311 Re-Activation – Request for DFSS Confirmation
**Date:** April 21, 2026 at 8:37 AM
**To:** Jessica Lehman jessica.j.lehman@icloud.com



Good morning, Jessica,

I appreciate you following up with me. I will be sure to follow up with Lauren today.

Do you have time to talk on the phone at 9am today? I know it is short notice, but I am hoping that we can briefly discuss the shelter options from yesterday.

Sincerely,

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**





**Housing is a human right.**

Chicago
Coalition to end
Homelessness

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Monday, April 20, 2026 7:39 PM
**To:** Kyle Voils <kyle@chicagohomeless.org>
**Subject:** Re: Incorrect Congregate Routing and 311 Re-Activation – Request for DFSS Confirmation

Hi Kyle,

Apologies for the third email this evening, but I believe I had a breakthrough that may help frame the narrative of this situation more clearly for Lauren when you reach out tomorrow.

After today's events, I realized that what happened with the placement isn't just a one-off mistake — it fits a larger pattern that may explain why DFSS keeps offering placements that contradict my disability tags and your communications. What I believe I noticed aligns with a broader post-COVID trend in city budgets nationwide, where hotel-based placements were significantly reduced after the emergency period.

It appears that the city may have significantly reduced or eliminated hotel-based placements after COVID, likely due to the extremely high hotel expenditures during the emergency period. What I experienced today looks like a post-crisis overcorrection: a shift toward avoiding hotel placements entirely, even when disability accommodations would normally require them. This would explain why "non-congregate" is being stretched to include shared rooms and why exceptions aren't being made despite clear documentation.

If this is correct, it means the barrier I ran into today isn't just a miscommunication — it's a structural gap that disproportionately affects people with sensory disabilities who require private rooms. And DFSS effectively acknowledged that gap on record.

I thought this framing might be helpful context for Lauren, since it connects the individual placement failure to a broader systemic issue.

Thank you again for everything throughout all of this,

# EXHIBIT C

Jessica Lehman (she/her)
(317) 450-9525

Thanks so much,
Jessica Lehman (she/her)

> On Apr 20, 2026, at 4:59 PM, Jessica Lehman <jessica.j.lehman@icloud.com> wrote:
>
> A quick update and a question:
> 1. At 4:47 PM on April 20, 2026, Ian from A Safe Haven Foundation called to offer a shelter placement; after confirming through my attorney's communication with DFSS that the room was a shared space and therefore not appropriate for my ADA/IHRA sensory disability needs or my documented gender-based violence history, I declined the placement on the phone and stated the reason for refusal. Ian told me to reach out if I need shelter placement again.
> 2. Would you be able to forward me a copy of your correspondence with your contact at Chicago DFSS? I want to have for my records them confirming no non-shared rooms at this time and everything else they said in case Lauren can't handle it and I need to go to an attorney or go pro se.
>
> Thank you again,
> Jessica Lehman
> (317) 450-9525
>
> > On Apr 20, 2026, at 4:38 PM, Kyle Voils <kyle@chicagohomeless.org> wrote:
> >
> > Hi Jessica,
> >
> > I heard back from DFSS. They said that the room that you were offered today was "non-congregate" but shared with another person. Apparently their conception of "non-congregate" does not mean a private individual room, which I know does not track with our common understanding of "non-congregate." I am sorry that I do not have better news to share with you.
> >
> > I asked if there were private, non-shared room options available that could accommodate your needs based on your disabilities and experiences with gender-based violence, and they said that there are no non-shared rooms available at this time. They said that while the shared room from today is no longer available, they will continue to check the other two "non-congregate" shelters and that you would be a priority for being placed there. Based on your experience today, though, I cannot guarantee that any placement that they offer to you at another "non-congregate" shelter will be in a private room not shared with another person.
> >
> > At this point, I think it would make sense for me to share this experience with Lauren and Equip for Equality, as I think it is relevant to the reasonable accommodation considerations that you were discussing with them. Do I have your permission to share this information with them?
> >
> > Sincerely,

# EXHIBIT C

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End
Homelessness**

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Monday, April 20, 2026 3:45 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Incorrect Congregate Routing and 311 Re-Activation – Request for DFSS Confirmation

Hi Jessica,

Thank you for following up with me via e-mail also. I am sorry that things did not go correctly with A Safe Haven and your placement at Primo. I will reach out again to DFSS via email now and see if they can try to resolve this issue for you. I will let you know if I receive any additional information.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End
Homelessness**

# EXHIBIT C

## <Outlook-A blue sig.png>

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Monday, April 20, 2026 3:26 PM
**To:** Kyle Voils <kyle@chicagohomeless.org>
**Subject:** Incorrect Congregate Routing and 311 Re-Activation – Request for DFSS Confirmation

Hi Kyle,

I wanted to update you immediately because something appears to have gone wrong in the system, and I need DFSS to confirm the correct next steps. I also left you a voicemail, but this email contains more information.

Earlier today, I received a call from **A Safe Haven Foundation**. The staff member told me I had been assigned to the **Primo Center at 6212 S. Sangamon (the congregate women's triage section)**. This was surprising and concerning because DFSS had already informed you that a **non-congregate placement had been secured**.

To understand what was happening, I went in person to the address they directed me to come first to "fill out paperwork" (thought it may have just been a placeholder): **A Safe Haven's office at Suite 128, 10 S. Kedzie**. The document shows that my **311 SR number was re-activated** with it only containing the limited information the hospital originally sent (that I am autistic with sensory issues). **It does *not* reflect the ADA accommodations, safety concerns, or the non-congregate placement request you submitted.** They provided me with a copy of the printed document verifying all this, which I've attached.

It appears the system mistakenly treated me as a standard congregate referral again, despite DFSS confirming earlier that a non-congregate space had been identified for me.

Could you please:

- Confirm with DFSS what the **actual placement** is supposed to be,

- Clarify why my SR number was re-activated and routed into the congregate system again,

- Make sure that they still intend to contact me directly at my (317) 450-9525 number when they are ready.

  And if at all possible, let me know who will be contacting me and who I should reach out to at Chicago DFSS with any questions if applicable.

# EXHIBIT C

I'm concerned about being placed incorrectly again, so any clarification or follow-up you can provide with DFSS would be extremely helpful.

Thank you again for all of your help.

Jessica Lehman (she/her)

(317) 450-9525

On Apr 20, 2026, at 10:51 AM, Kyle Voils <kyle@chicagohomeless.org> wrote:

Good morning, Jessica,

I was told just a few minutes ago that a non-congregate space has come available and that you are being placed there. I just wanted to check in and see if you have received any communication regarding that placement this morning?

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**



<Outlook-A blue sig.png>

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this

# EXHIBIT C

communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 5:18 PM
**To:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Jessica!

Thanks for talking with me just a bit ago. I am really sorry for the hardships that you have endured trying to get shelter here in Chicago. As we discussed, we are not able to provide legal representation to you currently. However, after our call and just before the close of business I emailed a contact at DFSS requesting assistance with getting you a non-congregate emergency shelter placement. With your permission, I also shared that you need a non-congregate placement because you are a person with disabilities including autism and a survivor of gender-based violence. I also flagged your SR number and phone number for them, and clarified that the pickup address associated with your SR number would need to be updated if you were to be referred and have a pickup. They may contact you directly, but if they contact me with information about a placement, I will contact you promptly in turn.

You and I also discussed that I had been in touch with another agency who had a possible apartment referral through the Chicago Low Income Housing Trust Fund program. You indicated that you did not want me to connect you with that agency for that referral because you have another promising lead for being connected to housing with a subsidy after your emergency situation. You also clarified for me that you are not currently receiving SSI. Just for your reference, I want to let you know that if you were connected to that apartment that I mentioned, to qualify you would have to provide documents including a photo ID, a social security card, birth certificate. proof of income (like paystubs or an SSI

# EXHIBIT C

award letter), and your last 4-6 bank statements. Again, I know that you do not want me to take any action related to that connection, but I just wanted to be sure that I shared with you some of the information that I was able to gather after talking with Lauren, just so you are in the loop about what I learned.

I want to express again that I am very sorry for the negative experiences you've had trying to access shelter here in Chicago. I will be sure to follow up with any additional information that I learn.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End Homelessness**

<Outlook-A blue sig.png>

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

# EXHIBIT C

**From:** Kyle Voils <kyle@chicagohomeless.org>
**Sent:** Friday, April 17, 2026 4:27 PM
**To:** Jessica Lehman
<jessica.j.lehman@icloud.com>
**Subject:** Re: Connecting you with the Chicago
Coalition to End Homelessness

Hi Jessica!

Yes, I am able to give you a call in just a minute. I
will be calling from 312-973-6106.

Sincerely,

Kyle

**Kyle Voils** | Senior Attorney
he/him/his *(Why do pronouns matter?)*
**Direct:** 312.973.6106 | **Main:** 312.641.4140
**Law Project of the Chicago Coalition to End
Homelessness**










<Outlook-A blue sig.png>

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not the intended recipient of this communication (or an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient), or if you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including any attachments, without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
Sent: Friday, April 17, 2026 4:17 PM

# EXHIBIT C

~~Sent: Friday, April 17, 2026 4:17 PM~~

**To:** Kyle Voils <kyle@chicagohomeless.org>
**Subject:** Re: Connecting you with the Chicago Coalition to End Homelessness

Hi Kyle,

Thank you so much for agreeing to help. I know it's late in the work day, but I'd greatly appreciate if you could try to give me a call or text at (317) 450-9525 before the end of the workday if at all possible!**Lauren said you might have some emergency ideas to help me get through the weekend.**

I'm dealing with a gap in sensory safe shelter for this weekend as a 23-year-old autistic transgender woman. I've attached to this reply all relevant documents, including:
1. My Ready-To-Go Legal Memorandum and Case Analysis
2. My documents including letters from my psychiatrist saying why traditional shelters are unsafe for me especially with sensory.
3. Evidence of my work as a Legal Researcher helping spark the Orr v. Trump case, helping demonstrate why I cannot return safely to Indiana.

Thanks so much,
Jessica Lehman (she/her)

> On Apr 17, 2026, at 4:11 PM, Lauren Galloway <LaurenG@equipforequality.org> wrote:
>
> Hi Jessica,
>
> It was nice talking with you today! As we discussed, I wanted to connect you with Kyle Voils with the Chicago Coalition to End Homelessness. Kyle is great and may be able to offer some additional support regarding your immediate need for shelter.
>
> We thought it might be easiest for the two of you to connect directly, and I've CC'ed Kyle here so that the two of you can coordinate follow up.
>
> Wishing you the very best,
>
> Lauren
>
> Lauren Galloway
> Staff Attorney
> Illinois ADA Project, Manager
> Equip for Equality, Inc.
> 20 N. Michigan Avenue, Suite 300

# EXHIBIT C

Chicago, IL 60602

The information contained in this email message and in any attachments constitutes confidential information that belongs to Equip for Equality, Inc. This email and attachments may also contain attorney work product or information protected by the attorney-client privilege or other privileges. This information is intended only for the use of the individual or entity to which it is directed. If you are not the intended recipient, you are hereby notified that any disclosure or reliance on this information is prohibited. If you have received this message in error, please notify us at 800-537-2632 (voice) or 800-610-2779 (TTY). Thank you.

# Exhibit D

| To | Chicagoland Hospitals |
|---|---|
| From | The Chicago Department of Family and Support Services & the Chicago Department of Public Health |
| Date | September 2025 |

## Guidance related to safely discharging and placing people experiencing homelessness into City of Chicago shelters

This document outlines a process to ensure patients being discharged from hospitals in the region can safely transition into Chicago's shelter system. By standardizing our approach, we aim to improve health outcomes and build shared understanding across all organizations and individuals involved.

Overview of the DFSS shelter system

The Chicago Department of Family and Support Services (DFSS) funds and oversees a network of shelter programs that includes over 6,800 shelter beds at 55 separate facilities operated by 34 different delegate agencies. Shelters accommodate homeless individuals and families and special populations including domestic violence survivors and young people. For people experiencing homelessness who need reasonable accommodation within the City of Chicago's shelter system, there is a policy in place for providers to follow, to ensure their needs can be properly addressed.

DFSS manages six Community Service Centers (CSC) throughout the city. These spaces help individuals and families in need of assistance access a wide range of resources, including City-funded and non-City-funded shelter referrals and placement. Centers operate Monday through Friday during normal business hours. It's important to note that none of the CSCs serve as drop-in centers or overnight shelters.

In December of 2024, DFSS and the Mayor's Office, in collaboration with regional partners and stakeholders, opened the 24/7 Chicago Shelter Placement and Resource Center (SPARC), a central access point to request shelter and receive basic services for adults (18+) without children experiencing homelessness in Chicago.

Discharging patients to City-funded shelters

Due to limited resources, the city shelter system does not have enough available beds to serve every adult experiencing unsheltered homelessness and, as a result, there are often long wait times after a request is made to 311. Further, the City-funded shelters cannot support patients with post-acute care needs, including people who require 24/7 medical care, or cannot remain safe even with a reasonable accommodation in place at a shelter.

Further, the vast majority of City-funded shelters do not provide skilled nursing or medical services. As such, they are only safe and appropriate for individuals who are able to take care of their own Activities of Daily Living (ADLs) with reasonable accommodations. All other individuals are not appropriate for a City-funded shelter, and thus, cannot be discharged to any DFSS CSCs, or the SPARC. Such individuals should be referred to the most appropriate medical or supportive living facility based on their medical needs.

1

# Exhibit D

A list of medical and/or supportive living facility types and contact information is included in Appendix 2 of this document. Hospital staff can assess ADLs using the Table 2 on the next page. A person's ability to complete ADLs is also assessed upon intake into the homeless services system, at which time it is determined if they can be safely placed into a City-funded shelter, or if they need a higher level of support than a traditional shelter can provide. The shelter placement process is described in more detail on the following page. *Table 1, below, describes individuals who can safely live at a City-funded homeless shelter.*

| Table 1 |
|---|
| **Individuals able to be placed in City shelters**<br>The individual needs to meet all the conditions listed below to be medically appropriate for City-funded shelters |
| <ul><li>Stable<ul><li>Not in an emergency medical condition. Meaning that an average person cannot reasonably expect that the individual will be put in serious jeopardy in the absence of medical care (215 ILCS 134/10)</li><li>Not actively in an acute mental health episode with the potential to harm oneself or others</li></ul></li></ul><ul><li>Able to perform ADLs (Activities of Daily Living) with or without the support of a reasonable accommodation or modifications<ul><li>Skills that allow an individual to maintain their health, including bathing, dressing, grooming, eating, toileting, and transferring.</li></ul></li><li>Reasonable accommodations or modifications may include but are not limited to individuals using and having access to mobility aids near their bed, use of adaptive devices while eating, widening pathways or clearing clutter, describing the location of a toothbrush on a counter to someone with low vision. Not in need of medical respite care</li></ul> |

Separate from City-funded traditional shelters, the City funds 64 respite beds administered by nonprofit delegate agency, The Boulevard, which serves as a medical-respite facility in Chicago. Many hospitals have direct agreements with The Boulevard or other respite centers. Contact and referral information for the Boulevard can be found in appendix 2 of this document. Hospitals should prioritize making effective their agreements and, should never discharge an unsheltered individual deemed in need of respite care to any CSCs, the Shelter Placement and Resource Center (SPARC), or a City-funded shelter.

2

# Exhibit D

| Table 2 |
| --- |
| **Individuals unable to be placed in City shelters** |
| If the individual has one or more of the health conditions, limitations of independent activities, or functional needs below, they should be referred to a higher level of care than City-funded traditional shelters |

| | |
| --- | --- |
| • Inability to care for self and manage ADLs with or without a reasonable accommodation or modification<br> o Skills required to independently care for oneself, such as eating, bathing, and mobility.<br>• Need for home care or visiting nurse services beyond wound care or IM/IV medication administration and beyond 2 weeks<br>• Severe immunosuppression (chemotherapy, end-stage AIDS, post-transplant, with an Absolute Neutrophil Count (ANC) <500MI)<br>• Major dementia with cognitive deficits (MMSE <25)<br>• Peritoneal dialysis<br>• Inability to make needs known or follow commands<br>• Unresolved delirium | • Does not possess the competency to independently manage chronic illnesses or medication administration, schedule, and reminders, including inability to self-administer insulin<br>• Inability to manage urinary or bowel incontinence or explosive diarrhea<br> o A person is able to manage their condition if they can use foley catheters, pads, and other incontinence supplies by themselves.<br>• Oxygen-dependence requiring an oxygen tank/cylinder of any size, containing liquid or compressed oxygen<br>• Cranial Halo Devices or stabilizing protective gear worn continuously<br>• Poses imminent risk of physical harm to themselves or others<br>• On a ventilator |

## Process when the individual is able to be placed in City-funded shelter

When the individual is stable, can perform ADLs, and meets all the conditions in Table 1 above, the process to help them obtain a shelter placement is as follows:

1. **Assess if the individual is experiencing unsheltered homelessness.** It is recommended to make best efforts to get in contact with a family member, friend or caregiver first, as soon as the individual enters the hospital or medical center.
   o If the individual is experiencing domestic violence, it is recommended that the individual receive assistance contacting the Illinois Domestic Violence Hotline for shelter, legal advocacy and other services.
   o If the individual is experiencing sexual violence or assault, it is recommended to connect that individual with the Rape Crisis Hotline for the Chicago metropolitan area.
   o If the individual is experiencing human trafficking either labor or sex, it is recommended to connect the individual with the Cook County Human Trafficking Hotline

*Contact information for these organizations is listed below.* Alternatively, these Hotlines may be reached by calling 311.

2. **Calling for shelter placement.** If an individual is seeking shelter placement, the hospital's care team should call 311. The earlier a hospital calls, the better chances to get a shelter bed in alignment with the desired discharge timeline.
   o When calling 311, the individual or hospital will receive a service request number (also known as a SR#) for shelter placement that puts the individual in the queue for shelter availability. The hospital

3

# Exhibit D

should communicate with the 311 operator, upon requesting shelter placement, if the individual has a medical condition and needs that would require specialty care.

o   When a placement is found, The Salvation Army will reach out to the given contact number (individual's number or caseworker's number).

o   When a bed is available, it may take up to 24 hours for transportation to arrive to take the individual to shelter.

➢   Coordinate with The Salvation Army about the date and time of the discharge, transportation, and anything else necessary for a safe discharge. The Salvation Army will ensure the shelter provider receives this information.

1.   It is important that the client waits for The Salvation Army transportation, and that **the hospital does not transport the client independently**.

2.   The Salvation Army transportation staff need to conduct an in-depth assessment and referral process that can only be done in-person during the transport process. This is part of the mandatory Verification of Homelessness process required by the United States Department of Housing and Urban Development (HUD). **If this is not done, the individual cannot be placed into shelter.**

➢   Inform The Salvation Army about the individual's medical needs (cannot be medically urgent).

1.   If the individual requires medication, the hospital staff or the individual should bring this with them.

2.   If the individual was diagnosed with an infectious disease and needs to be isolated on site, the hospital should indicate to The Salvation Army what the isolation recommendations are and the recommended duration of isolation.

➢   The individual must be properly clothed and wearing shoes. Dropping off individuals in hospital gowns or underwear is not fit for shelter of any kind but, in this case, for City-funded facilities that hospitals are working to place individuals into.

3.   **If a placement is <u>not</u> immediately identified:**

o   Coordination with The Salvation Army is still important and is the first best option if a proper placement is not identified right away.

o   When a bed is not immediately available, it may take 3-5 days for one to become available.

4.   **Other options**

o   DFSS Community Service Centers (CSCs) a centers or overnight shelters. The SPARC is a central place where single adults are able to be assessed for diversion and shelter placement and receive interim basic services, such as food and overflow shelter, while awaiting services. Space is available for up to 200 people maximum waiting for shelter placement.

➢   is equivalent to dropping them off on the street.

o   Prior to discharging unsheltered individuals to the **SPARC**, hospitals are urged to take the following steps:

➢   **Contact the SPARC prior to dropping off any client <u>to ensure that the site is not at capacity.</u> The contact number for the SPARC is 773-526-3707.**

➢   Coordinate with the SPARC staff about the date and time of the discharge, transportation, and anything else necessary for a

4

# Exhibit D

safe discharge. This will help ensure there is capacity at the SPARC at the time of discharge.

➢ Inform the SPARC coordinator about the client's medical needs (cannot be medically urgent). If the individual requires medication, have them bring this with them.

➢ The individual must meet all the conditions in Table 1 and be properly clothed and wearing shoes. Dropping off individuals in hospital gowns or underwear is a risk to their health and safety.

➢ **Coordination with this location is required.** If an individual is dropped off without coordination and SPARC is at capacity, the staff will help them create a shelter request (SR) but they will not be able to wait on-site due to safety measures. This type of action is equivalent to dropping them off on the street.

When the individual is not medically stable, cannot perform ADLs, and/or does not meet all the conditions in Table 1, Chicagoland hospitals, which includes its representatives, workers, or anyone affiliated with them, cannot discharge them at any of DFSS CSCs or the SPARC. While the SPARC can provide brief opportunities for overnight shelter when beds are available and there is no shelter availability, individuals must meet all the conditions in Table 1.

<u>Medically appropriate alternatives for unsheltered individuals who are not appropriate for City-funded shelters</u>

When the individual is unable to be safely placed in a City-funded shelter due to the need for medical care and/or advanced interventions, Chicagoland hospitals may coordinate with the State of Illinois or directly with the living facility available and appropriate for such individuals. The City of Chicago, including DFSS, does not oversee these resources, with the exception of The Boulevard respite center.

5

# Exhibit D

| Placement alternative | Contact | Phone | Other resources |
|---|---|---|---|
| Specialized Mental Health Rehabilitation Facility (SMHRF) | Illinois Department of Healthcare and Family Services (HFS) | 800-226-0768 (Client Health Care Hotline) | Referential list of SMHRFs in Chicagoland |
| Crisis Residential Providers | Illinois Department of Human Services | 1-800-843-6154 | Crisis Residential Providers |
| Respite Center | Illinois Public Health Institute | 312-850-4744 | The Boulevard Pre-Intake Application Form |
| Respite Center | The Boulevard Chicago | 773-533-6013 | The Boulevard Pre-Intake Application Form |
| Respite Center | Illinois Respite Coalition | 866-455-7377 ext. 101 or ext. 103 for Spanish | Cook County Medical Respite Network |
| Nursing Home | Illinois Department on Aging | 800-252-8966 | IDPH website for Facility Lookup and Nursing Home Compare Tool |
| Long Term Care (LTC) Facility | HFS | 217-782-0545 | Chicago LTC Contact List |
| Long Term Care (LTC) Facility | Illinois Department of Human Services | 800-843-6154 (If the individual has a developmental disability or mental illness) | Chicago LTC Contact List |
| Veterans' Homeless Program | Illinois Department of Veteran's Affairs | 815-468-9737 | Prince Home at Manteno Application |
| Veterans' Homeless Program | National Call Center for Homeless Veterans | 877-424-3838 | VA Homeless Program Page |
| Illinois Veterans' Homes | The Adjutant Illinois Veterans' Home - Chicago | 773-794-3763 | Veterans' Home at Chicago page |

Remember that the most appropriate housing resource for a discharged individual **depends on their medical needs**. This mindset is true for all individuals, including people experiencing unsheltered homelessness.

Individuals who are experiencing homelessness as a result of gender-based violence or human trafficking

6

# Exhibit D

If the person being discharged is experiencing homelessness due to domestic violence, sexual violence, or human trafficking, there may be other resources available to them through emergency hotel stays, domestic violence shelters, or the Coordinated Entry System. While capacity is not guaranteed nor always funded by the City, to access these resources, you or the participant must contact any of the hotlines below.

| Illinois Domestic Violence Hotline | Chicago Rape Crisis Hotline | Local Human Trafficking Hotline |
|---|---|---|
| 877-863-6338 Call or text 24/7<br><br>Chat online 24/7 at Get Help - The Network (the-network.org)<br><br>English, Spanish and other languages available. | 888-293-2080 Call or text 24/7<br><br>Chat online M-F 9am-5pm at Rape Crisis Hotline - YWCA Metropolitan Chicago (ywcachicago.org)<br><br>English, Spanish and other languages available. | 877-606-3158 Call 24/7<br><br>English, Spanish and other languages available. |

As a referential (unofficial) resource, please review the following documents:

- Workflow with housing resources available for discharged clients experiencing homelessness in Chicago (**Appendix 1**)

- Referential (unofficial) guidelines when discharging clients unfit for DFSS homeless shelter (**Appendix 2**)

7

# EXHIBIT D

**Appendix 2**

*Referential guidelines. For official information, please refer to the State and Federal regulations.*

1. <u>Path when discharged individuals have acute mental health concerns:</u>

- There are four resources available, all administered by the State:
  - o Specialized Mental Health Rehabilitation Facility (SMHRF)
  - o Crisis Residential Providers
  - o Respite Centers
  - o Nursing Homes

- SMHRF:
  - o Responsible for the Illinois Department of Healthcare and Family Services (HFS)
  - o SMHRFs are facilities that are federally designated as institutions for mental disease (IMDs) that specialize in providing services to individuals with serious mental illness
  - o People with high mental care needs are eligible for SMHRFs, but not appropriate for individuals in crisis (danger to themselves or others). For those needing a higher level of medical care, skilled nursing homes may be the best option
  - o Most SMHRFs require Medicaid coverage
  - o For more information, visit (includes list of SMHRFs in Chicagoland): https://mentalhealthillinois.com/residential/
  - o For more referential information, visit (IL SMHRF overview presentation 2022): https://maximusclinicalservices.com/sites/default/files/pasrr/documents/IL-SMHRF-Process-and-Intent-Handout-7.8.22.pdf

- Crisis Residential Providers
  - o Administered by the Illinois Department of Human Services (IDHS)
  - o Crisis residential providers offer short-term, supervised, and recovery-oriented care for individuals experiencing a mental health crisis. These providers offer safe, secure environments for stabilization and can act as a bridge to other long-term mental health services. They typically provide crisis intervention, assessment, and treatment in community-based facilities.
  - o Call IDHS at 1-800-843-6154
  - o Refer to the list of Crisis Residential Providers here:
  - o https://www.dhs.state.il.us/page.aspx?item=164781843-6154

- Respite Center:
  - o Part of Illinois Medical Respite Capacity Building Initiative (IMRCBI), which is led by the IL Public Health Institute

10

# EXHIBIT D

- o Respite centers are short-term housing combined with health services that allow individuals experiencing homelessness the opportunity to rest, recover, and heal in a safe environment while accessing medical care and other supportive services. Welcomes behavioral services
- o Do not require Medicaid or other types of insurance
- o The Boulevard is the biggest respite center in Chicago (64 beds)
  - ➢ Call 773-533-6013
  - ➢ Pre-Intake Application Form
- o Living Room Program (LRP) is for individuals in need of a crisis respite program with services and supports designed to proactively divert crises and break the cycle of psychiatric hospitalization https://www.dhs.state.il.us/page.aspx?item=126349

- Nursing Home:
  - o Nursing homes are residential facilities that offer around-the-clock skilled nursing care in addition to other supportive services.
  - o These facilities are licensed, regulated and inspected by the IL Department of Public Health.
  - o With Medicaid, which will pay for a nursing home only when it's medically necessary (previous needs screening)
  - o You may find the list of 157 Nursing Homes DFSS Senior Services Division monitors for the Ombudsman program (updated December 2024) here.

Additionally, when the individual is a veteran, they can access the following resources:

- Veterans Homeless Program (Prince Home)
  - o The Prince Home at Manteno is a program for homeless veterans who are also diagnosed with a clinical disorder and/or physical disability, helping to cope with issues such as Post Traumatic Stress, substance abuse, and other challenges. It is located 40 miles south of Chicago.
  - o The facility has a maximum occupancy of 15 residents.
  - o To submit an application to Prince Home at Manteno:
    - ➢ Prince Home at Manteno Application
    - ➢ Phone: 815-468-9737
- Illinois Veterans' Homes
  - o Illinois veteran and eligible spouses seeking skilled and domiciliary care:
    - ➢ For veterans seeking skilled care, the program offers five veterans' homes located across Illinois: Chicago, Anna, LaSalle, Manteno and Quincy.
    - ➢ For veterans seeking domiciliary care, the program offers grants of up to $15,000 to make their homes suitable for their personal and medical needs.
  - o The Veterans' Home of Chicago is situated on the northwest side and offers over 200 private rooms with baths. This home accommodates veterans seeking skilled nursing and memory care.

11

# EXHIBIT D

- o Veterans who have a monthly income will pay a monthly maintenance charge towards the total cost of their care. The charge is based solely on the monthly income and does not include other assets. Also, there are Aid & Attendance allowance opportunities.
- o For more information:
  - ➤ Visit: https://veterans.illinois.gov/services-benefits/homes/homes.html
  - ➤ Contact the Adjutant Illinois Veterans' Home – Chicago: Phone (773) 794-3763, Address: 4250 N. Oak Park Avenue, Chicago, IL, 60634.

2. <u>Path when discharged individuals have acute physical health conditions and cannot perform ADLs:</u>
   - There are two resources available, both administered by the State:
     - o Long Term Care Facilities
     - o Nursing Home
   - LTC Facilities:
     - o LTC Facilities, individuals must be transferred over from a 3-day hospital stay.
     - o The Department of Health Care and Family Services (HFS) is responsible for the Medicaid LTC program.
     - o Individuals in LTC must also have Medicaid, or someone must be able to help them access it.
   - Nursing Homes:
     - o Nursing homes are regulated by public and private agencies at the state and federal levels, including the Illinois Department of Public Health (IDPH) and the U.S. Department of Health and Human Services' Health Care Financing Administration (HCFA)
     - o Nursing homes are residential facilities that offer around-the-clock skilled nursing care in addition to other supportive services
     - o With Medicaid, which will pay for a nursing home only when it's medically necessary (previous needs screening)
     - o List of <u>Illinois Nursing Homes</u>

Additionally, when the individual is a veteran, they can access the following resources:

- Veterans Homeless Program (Prince Home)
  - o The Prince Home at Manteno is a program for homeless veterans who are also diagnosed with a clinical disorder and/or physical disability, helping to cope with issues such as Post Traumatic Stress, substance abuse, and other challenges. It is located 40 miles south of Chicago.
  - o The facility has a maximum occupancy of 15 residents.
  - o To submit an application to Prince Home at Manteno:
    - ➤ <u>Prince Home at Manteno Application</u>
    - ➤ Phone: 815-468-9737
- Illinois Veterans' Homes
  - o Illinois veteran and eligible spouses seeking skilled and domiciliary care:

12

# EXHIBIT D

- ➢ For veterans seeking skilled care, the program offers five veterans' homes located across Illinois: Chicago, Anna, LaSalle, Manteno and Quincy.
- ➢ For veterans seeking domiciliary care, the program offers grants of up to $15,000 to make their homes suitable for their personal and medical needs.
  - o The Veterans' Home of Chicago is situated on the northwest side and offers over 200 private rooms with baths. This home accommodates veterans seeking skilled nursing and memory care.
  - o The admission to an Illinois Veterans' Home is based upon:
    - ➢ The ability of the Veterans' Home to provide adequate and appropriate care and services required by the person.
    - ➢ Bed availability
  - o Veterans who have a monthly income will pay a monthly maintenance charge towards the total cost of their care. The charge is based solely on the monthly income and does not include other assets. Also, there are Aid & Attendance allowance opportunities.
  - o For more information:
    - ➢ Visit: https://veterans.illinois.gov/services-benefits/homes/homes.html
    - ➢ Contact the Adjutant Illinois Veterans' Home – Chicago: Phone (773) 794-3763, Address: 4250 N. Oak Park Avenue, Chicago, IL, 60634.

3. <u>Path when discharged individuals can perform ADLs but need medical respite care:</u>

- • Respite Center
  - o Part of Illinois Medical Respite Capacity Building Initiative (IMRCBI), which is led by the IL Public Health Institute
  - o Respite centers are short-term housing combined with health services that allows individuals experiencing homelessness the opportunity to rest, recover, and heal in a safe environment while accessing medical care and other supportive services. Welcomes behavioral services
  - o Do not require Medicaid or other types of insurance
  - o The Boulevard is the biggest respite center in Chicago (64 beds)
    - ➢ Call 773-533-6013
    - ➢ <u>Pre-Intake Application Form</u>

4. <u>Path when discharged individuals are seniors or people with disabilities with Medicare</u>

- • Whenever a senior or person with disabilities who qualifies for Medicare is hospitalized, the individual shall be notified of discharge at least 24 hours prior to discharge from the hospital
- • Also, hospital must notify Nursing Home at least 24 hours prior to discharge
  - o **If** the assessment is completed, process ends there

13

# EXHIBIT D

- o If the assessment cannot be completed, hospital notifies Department on Aging which shall notify the Department of Healthcare and Family Services
  - o The Illinois Department on Aging shall adopt rules to address these instances to ensure that the individual is able to access nursing home care
  - o The Illinois Department on Aging, in coordination with hospital, can also determine the transfer **of the individual to an LTC**
- State of Illinois Centers for Independent Living
  - o You can find a directory of CILs at ILRU.org
- For general information about resources for seniors, contact the appropriate Area Agency on Aging (AAA)
  - o You can find a directory of AAAs at https://ilaging.illinois.gov/forprofessionals/aaa-list.html

14

# EXHIBIT E

## EXHIBIT E – UNSWORN DECLARATION OF JESSICA

## JAMIE LEHMAN UNDER PENALTY OF PERJURY

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION


Jessica Lehman,

Plaintiff,


v.


City of Chicago,

Defendant.


Case No. _____

Judge _____

---


**DECLARATION OF JESSICA JAMIE LEHMAN**

# EXHIBIT E

I, Jessica Jamie Lehman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am the Plaintiff acting Pro Se in this action. I am 24 years old and currently reside in a confidential hotel-based shelter program operated by SGA Youth & Family Services ("SGA"), a delegate agency of the City of Chicago's Department of Family and Support Services ("DFSS").

2. On **May 28, 2026**, I informed an SGA employee that I intended to request disability accommodations. During a phone call on **May 29, 2026**, I stated: "I told you last night I was going to request an accommodation," and the SGA employee responded, "Yep," confirming SGA's knowledge of my protected activity.

3. Later on **May 29, 2026**, while I was experiencing a panic attack, SGA case manager **Sianny Munroe** sent me a text message stating that I was being **terminated effective June 2, 2026** for an alleged "major breach of confidentiality," specifically claiming that I disclosed the hotel address to Christopher from Thresholds, a case manager for my Department of Mental Health (DMH) provider.

4. After receiving the termination notice, I immediately contacted Thresholds to understand what had occurred. While still in the car with my Thresholds case manager, Christopher, he confirmed to me verbally that Thresholds already had the hotel address from their intake paperwork. Later that same day, Thresholds staff called SGA directly and confirmed that any address information came from Thresholds' own internal records, not from me.

# EXHIBIT E

During that call, the Thresholds staff member told SGA staff the following::

a. **Thresholds already possessed the hotel address through their internal systems** before any discussion with me that day.

b. When I was ready to give the address to my Thresholds case manager, **he stopped me and said he already had it**.

c. Thresholds staff—not me—had communicated the address to SGA in the course of their normal duties.

5. Thresholds staff **called SGA on May 29, 2026**, before I contacted them, to confirm directly that **I had not disclosed the address** and that any disclosure came from Thresholds' own prior internal records.

6. I did provide the hotel address to Thresholds during their initial intake process because it was required for me to receive services. However, I did not disclose the address in violation of any program rule, nor did I disclose it in connection with the May 29 incident. Thresholds staff confirmed to me—and later directly to SGA—that they already had the address from their own intake records and that any address information SGA received came from Thresholds' internal system, not from any improper disclosure by me.

7. I met with Thresholds near the hotel because I have a **documented disability accommodation** requiring that in-person meetings occur only in quiet, private, sensory-safe environments. SGA and DFSS have been aware of this since at least **May 12, 2026**, when I provided Dr. Mathewson's letters.

# EXHIBIT E

8. SGA has **not withdrawn** the termination notice, even after Thresholds confirmed that I did not disclose the address.

9. SGA never provided me with any alternative mailing address for my housing applications, including the Front Door Diversion Program packet and the Bridge Subsidy referral. Providing an address to my DMH provider was necessary for these applications.

10. The termination notice was issued **one day after** I informed SGA of my intent to request accommodations, and during a psychiatric panic episode, without any individualized assessment or ADA-compliant communication. SGA refused to discuss the matter by phone, insisted on an immediate in-person confrontation, and labeled the situation a "serious breach" before gathering any facts.

11. Based on the timing, the false factual basis, and SGA's refusal to engage in any interactive process, I believe the termination is **retaliatory** and based on my disability and my protected activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 30, 2026

/s/ Jessica Jamie Lehman

Chicago, IL 60612

Email: jessica@jessicaj.studio

Phone: (317) 450-9525

# EXHIBIT F

**Exhibit F – Audio Recording of May 29, 2026 Phone Call with SGA Program Therapist Georganne Struss (Post-Termination Call; Authenticated by Plaintiff)**

An audio recording of Plaintiff's May 29, 2026 phone call with SGA program therapist Georganne Struss, made after SGA case manager Sianny Munroe had already sent Plaintiff the written termination notice via text message. The recording captures SGA acknowledging that Plaintiff informed them on May 28 that she intended to request disability accommodations, refusing to discuss the matter by phone despite Plaintiff stating she was in a panic attack, insisting on an immediate in-person confrontation, and characterizing the situation as a "serious breach" before gathering any facts. The recording further reflects SGA's refusal to engage in the ADA interactive process and its escalation of Plaintiff's psychiatric distress. The audio file is hosted at a timestamped public Google Drive link below and is authenticated by Plaintiff's accompanying declaration:

https://drive.google.com/file/d/1NwviosFqu6Pn_6AwYfZQDg6yBmz8_FVF/view?usp=share_link

# EXHIBIT G






**Sianny**

**Thursday 12:21 PM**

Hi Sianny, this is Jessica Lehman. I just emailed you and Sianny the official MAXIMUS documentation confirming that FDDP is the correct Bridge Subsidy pathway for clients with SMI diagnoses like mine. It applies to both my case and will hopefully help others in the program with similar needs. The email also includes my weekly updates. 🤍

**Friday 2:35 PM**

I was told you have a guest and someone came to the confidential location looking for you.

This is a breach of confidentiality and I am unsure if it was Thresholds why they would come to a confidential location where they were not allowed to come to meet you. This is a breach of contract, allowing a guest to know your location, but also is looking for you by name

Due to the location being exposed, we have to move forward with removing you from the program by Tuesday.

**Friday 7:20 PM**

I acknowledge that I have received notice of your intent to remove me from the program effective Tuesday, June 2nd, 2026.

Text Message · SMS

---

**Sianny**

Info    Photos

phone
+1 (312) 788-7094

Hide Alerts

Show in Shared with You

Automatically Translate          Off ⌄

Show in Contacts

Block Contact

Download 1 Attachment in iCloud

This conversation is not encrypted. Learn more...

# EXHIBIT G



Sat, May 9 at 6:57 PM

Hi Sianny! Before our Tuesday meeting, could you look into any long-term housing subsidies that would be appropriate for my disability needs as backups to the Illinois Bridge Subsidy? I'm continuing to work towards hopefully getting a referral for it through Thresholds.

I'm specifically looking for programs that:
- Don't require a minimum rent payment when someone has zero income (income-based only).
- Don't have time limits or "self-sufficiency" deadlines that will lead me back to homelessness in a few years when the voucher runs out - renewable is fine.
- Don't require work participation or case-management compliance beyond what's reasonable for someone with disabilities.
- Offer self-contained units (private bathroom, bedroom, and no shared living areas due to sensory needs).

If you know of any programs that meet these criteria, could you bring them on Tuesday so we can review them together? Thank you!

Mon, May 11 at 8:57 AM

Good morning, sounds good I'll do my best to try making connections for referrals and will keep you updated on our resources

Also want to mention our hours! Both Monday-Friday
Sianny 9-5
Georgie 12-8
Any emergency please call 911

Thank you for keeping me in the back of your mind in case anything pops up and letting me know the best hours for me to send texts, I apologize if my prior messages disturbed you during your time off instead of just waiting in your queue.

Thresholds for the Bridge Subsidy got back to me immediately on Friday after I alerted them I had gotten Medicaid, said while they can't assign me to their housing support right away, they were assigning me to a team so I can begin going through that pipeline. I

**Sianny**

📞 🎥 ✉️ ▣

Info   Photos

phone
+1 (312) 788-7094 📞

Hide Alerts ⬜

Show in Shared with You 🔵

Automatically Translate    Off ◇

Show in Contacts

Block Contact

Download 1 Attachment in iCloud

This conversation is not encrypted. Learn more...

Text Message · SMS

# EXHIBIT G



**Sianny**

Sat, May 23 at 1:38 PM

So a bit of a security problem last night (05/22) around 10:20PM: Some stranger (I believe they said was a man) was allegedly there as a "guest" for me, cited my room number, and the hotel staff called up to my room phone telling me I had a visitor. I told them I hadn't invited anyone and to send them away (I have not given out my address to anyone), they did. I told Abraham and he's taking a look into what happened.

I'm safe, that's what matters. Could have just been a drunk person off the street who had the wrong hotel, we don't know. They left after being turned away and have not since returned. I'll see what Abraham finds if anything.

Tuesday 9:03 AM

Good morning, I'm sorry this happened and I hope this didn't alarm you
I spoke with management about this Saturday as well and I'm sorry they disturbed you

Tuesday 10:42 AM

They informed me that it was a false alarm, thank you for reaching out 🤍

Wednesday 3:52 PM

Please join us at Ricanos restaurant for a group lunch before some of our clients transition!

**FAREWELL LUNCH**
PLEASE JOIN US
TO SAY FAREWELL TO SOME CLIENTS EXITING THE PROGRAM.
WED. JUNE 3rd - 12:00 PM

Text Message · SMS

---

**Sianny**

Info    Photos

phone
+1 (312) 788-7094

Hide Alerts

Show in Shared with You

Automatically Translate          Off ⌄

Show in Contacts

Block Contact

Download 1 Attachment in iCloud

This conversation is not encrypted. Learn more...

# EXHIBIT G

**From:** **Jessica Lehman** jessica.j.lehman@icloud.com  📎
**Subject:** Re: SGA I Client Resources
**Date:** May 12, 2026 at 4:22 PM
**To:** Munroe, Sianny smunroe@sga-youth.org
**Cc:** Struss, Georganne gstruss@sga-youth.org
**Bcc:** Jessica Lehman jamie.strawberry321@gmail.com



Hi Sianny,

Thank you for getting back to me. I've gone through each of the resources you shared. Many are the same ones I exhausted before arriving in Chicago, while others have since been confirmed as inapplicable by providers. I wanted to summarize what I found so we can stay aligned on realistic backup and alternatives to keep in mind while I attempt to pursue the Illinois PSH Bridge Subsidy **(the SMI + Homelessness path)** through Thresholds.

## 1. Illinois Housing Development Authority (IHDA)

IHDA does not directly offer rental assistance to individuals with disabilities. Their tenant-facing page (Rental Housing Resources) mainly links to:

- **ILHousingSearch.org**, which is a general landlord listing site. Some landlords may accept vouchers, but it is not a voucher program, not PSH, and not a reliable indicator of real-time availability. The Chicago Housing Locator has the same limitations.

- The remaining links on that page appear to be property listings that are not voucher providers.

## 2. Mayor's Office for People with Disabilities (MOPD) Housing Resources Guide

I reviewed the guide and found:

- The **Chicago Housing Locator** (already addressed above).

- Two potentially relevant agencies:

    o **Housing Authority of Cook County**, which only has Sunrise Apartments in Chicago, and they currently have no available units.

    o **Single Room Housing Assistance Corporation**, which is no longer in operation.

## 3. Thresholds Housing and Catholic Charities

I've confirmed with Cortney Ritsema at Thresholds that most PSH programs and related housing options are backed up several years. Their websites also show closed waitlists, and many programs do not meet my disability-related needs.

## 4. Mercy Housing

I did find several Mercy Housing properties with open waitlists that are not seniors-only. I'm unsure how long the waitlists are, **but these may be worth reviewing together:**

- Roseland Village

- The Studios

- South Loop Apartments

- Miriam Apartments

- Malden Arms II Apartments

- Delmar Apartments

## 5. Illinois Department of Human Services (IDHS)

Through DMH, IDHS administers the **PSH Bridge Subsidy**, which I am pursuing through Thresholds (since referrals must come from a DMH provider). Additional programs mentioned include:

- **Section 811 PRA**, which I am not eligible for because I am not a class member of the qualifying cases.

- The **Statewide Referral Network (SRN)**, which I cannot self-refer to.

## 6. Chicago Housing Authority (CHA)

The main Section 8/HCV waitlist has been closed for over a decade. Other CHA building-specific waitlists are open, but most have multi-year waits and do not meet my disability-related needs (no clinical support, no sensory-safe units, and no immediate availability).

## 7. National Disability Institute

This appears to restate information already covered in IHDA, MOPD, and IDHS materials, without offering additional housing pathways.

## 8. Chicago Coalition for the Homeless

# EXHIBIT G

CCH is a legal advocacy organization, not a housing provider. Their Senior Attorney, Kyle Voils, previously contacted DFSS on my behalf regarding my needs and the city's obligations, which ultimately led to my referral to your team through DFSS and A Safe Haven Foundation.

**Summary of Viable Options**

Outside of the **PSH Bridge Subsidy** (which other state PSH programs also reference as the required path for eligible individuals), very few options meet my disability-related criteria:

- No minimum rent payment when income is zero (income-based only).

- No time limits or "self-sufficiency" deadlines that would lead back to homelessness.

- No work-participation requirements beyond what is reasonable for someone with disabilities.

- Self-contained units (private bathroom, bedroom, and no shared living areas due to sensory needs).

I have already secured a willing landlord at **Dearborn Plaza** on the Gold Coast who will accept the Bridge Subsidy once I obtain it, and I have toured the building. I will keep you updated as Thresholds continues moving me through their process.

If you come across any additional resources that may align with these needs, I'm happy to explore them with you. **I've also attached my psychiatrist's letters documenting my broader limitations if that is helpful in any way** (packet attached was originally written to UChicago ER but contains the same context and her letters), along with a **resource guide to the PSH Bridge Subsidy** that I found online that I would appreciate if you read before our Thursday 1:1 meeting.

Thank you again for keeping your ears open for additional potential opportunities for me,

Jessica J. Lehman (she/her)

(317) 450-9525

resourceguide_110708.pdf

Reasonable Accommodation Packet.pdf

On May 12, 2026, at 2:21 PM, Munroe, Sianny <smunroe@sga-youth.org> wrote:



**Sianny Munroe**

- 312-788-7094
- SMunroe@sga-youth.org
- 3501 West 48th Place Chicago, IL 60632
- smunroe@sga-youth.org

**From:** Munroe, Sianny <smunroe@sga-youth.org>
**Sent:** Tuesday, May 12, 2026 1:54 PM
**To:** Jessica.jlehman@icloud.com <Jessica.jlehman@icloud.com>
**Cc:** Struss, Georganne <gstruss@sga-youth.org>

# EXHIBIT G

**Subject:** SGAT Client Resources

Hello,

I am attaching some local resources to see if you have checked in with any of these listed below besides Thresholds:

Key Resources for No/Extremely Low-Income Disabled Residents:

- **Illinois Housing Development Authority (IHDA):** Offers rental assistance for people with disabilities through properties that provide supportive services.

- **Mayor's Office for People with Disabilities (MOPD):** Maintains a Chicago Housing Locator for accessible, affordable housing. https://311.chicago.gov/s/article/Mayor-s-Office-for-People-with-Disabilities-Housing-Resources-Housing-Information-Services-Guide?language=en_US

- **Thresholds Housing:** Offers specialized programs, including options for those with no income, targeting, for example, individuals with mental health conditions.

- Catholic Charities: https://www.catholiccharities.net/affordable-housing/affordable-housing-for-people-with-disabilities/

**Key Action Steps:**

- Contact the Mayor's Office for People with Disabilities for a complete, up-to-date guide on available accessible housing.

- Consider reaching out to non-profit organizations likeMercy Housing Lakefront for service-enriched, affordable, and accessible housing.

**Additional Resources:**
- **https://www.dhs.state.il.us/?item=159358**
- **https://www.dhs.state.il.us/page.aspx?item=87600**
- **https://www.thecha.org/public-housing/additional-assistance-people-disabilities**
- **https://www.nationaldisabilityinstitute.org/illinois/housing-opportunities-for-people-with-disabilities/**
- **https://chicagohomeless.org/our-work/public-benefits/**

Best,



Sianny Munroe

# EXHIBIT G



📞 312-788-7094

✉ SMunroe@sga-youth.org

📍 3501 West 48ᵗʰ Place Chicago, IL 60632

🌐 smunroe@sga-youth.org

Notice: This email contains confidential information, intended only for the individuals(s) named above. If you are NOT the intended recipient, any disclosure, forwarding, distribution, or copying of this e-mail is illegal. If you have received this communication in error, please notify us immediately by return e-mail, and delete the original message from your e-mail system. Thank you.

June 1st 2026

EXHIBIT H



Dear Jessica,

This letter serves as a formal, one-time written warning regarding a serious violation of program safety protocols and visitor policies. On May 29th, it was brought to the attention of program staff that you disclosed the direct, confidential address of the shelter to an outside party without informing or coordinating with our staff. It is now understood that the individual who arrived at the facility was supported by an external program.

While we recognize that this individual is a professional who forms part of your support network, **the direct address was still shared without prior discussion with our team**. Furthermore, because this visit was unannounced and unexpected by SGA Youth & Family staff and hotel staff, creating a security mix-up regarding our strict **No Visitor Policy**. Our concerns were compounded when you chose to leave the facility premises with this external visitor without notifying or checking out with program staff, leaving your whereabouts unknown to us.

- **Confidentiality of Location:** The physical address of this shelter is strictly confidential. Under no circumstances are clients permitted to share, post, or disclose the location to anyone—including case managers, providers, or professionals from external organizations—**without explicit, prior authorization from our program.**
- **Inter-Agency Coordination:** Professionals must follow established professional protocols to connect with you, rather than arriving at a confidential site without proper identification to the Gender Based Violence shelter.
- **No Visitor Policy & Staff Accountability:** To maintain a secure and accountable environment, unannounced visitors are strictly prohibited. Additionally, for safety and emergency tracking, clients must notify staff before leaving the premises, especially when departing with an outside party.

To maintain your standing and continue receiving services within this program, you must immediately adhere to the following directives:

1. **Cease Independent Location Sharing:** You must immediately stop sharing the facility's direct address. If an external provider or agency requests your address, you must direct them to contact our program staff directly.

June 1st 2026

**EXHIBIT H**



2. **Coordinate External Support:** Work with your primary Case Manager here to properly document and coordinate any external professional visits or services so they can be conducted safely and through approved channels.

3. **Mandatory Check-In/Check-Out:** You must communicate with program staff regarding your comings and goings, and you may not leave the premises with outside parties without notifying staff beforehand.

Program Timeline & Exit Notice

Please be reminded that your program participation has an established timeline. Your scheduled exit date from the shelter is **June 26th at 12:00 PM (noon)**, which marks the conclusion of your **60-day stay**.

It is critical that you strictly adhere to all program rules, safety guidelines, and corrective actions listed above for the remainder of your time with us.

Please understand that this is a **one-time warning**. The confidentiality and security of this shelter are paramount. Any future unauthorized disclosure of the location, failure to communicate your whereabouts, or further violations of the visitor policy will compromise the safety of the facility and will result in an immediate review of your program participation, up to and including immediate termination of your housing services prior to your scheduled exit date. We value having you in our program and want to support you in successfully reaching your goals and transitioning safely by **June 26th**. If you have any questions regarding this warning, or if you need assistance coordinating with your external support team or finalizing your exit plan, please reach out to your Case Manager immediately.

Sincerely,

**Sianny Munroe | Case Manager**

SGA Youth & Family Services | GBV Shelter

June 5th 2026

# EXHIBIT H



The purpose of this Letter of Expectation is to clearly outline the program guidelines that support your safety, accountability, and successful participation in our services. Our goal is to provide you with a structured environment while helping you connect with the outside resources you need. To ensure your safety and maintain accurate program records, you must communicate your whereabouts daily. Please review the following expectations carefully.

- Departure: You are required to check in directly with your Case Manager or Counselor before leaving the hotel property.
- Return: You must check in directly with your Case Manager or Counselor immediately upon returning to the hotel property.
- No Visitors Allowed: To maintain the safety, privacy, and security of all program participants, absolutely no outside visitors are permitted on the hotel premises or inside your room at any time.

We understand that connecting with outside resources (e.g., legal aid, medical professionals, family support, or community organizations) is crucial for your progress. Because visitors are not allowed at the hotel, you must use the following plan to meet with outside entities in a safe, confidential location:

- Step 1: Identify a Confidential Location

Meetings must take place at an approved, neutral, and confidential off-site location. Recommended options include:

- o The office/facility of the resource you are meeting.
- o Private meeting rooms at the local public library.
- o Approved community service centers.
- Step 2: Pre-Schedule and Notify Staff

Before finalizing any off-site appointments, discuss the details with your Case Manager/ Counselor.

- Step 3: Complete the Off-Site Plan Log

For every outside meeting, please complete the brief log below prior to your departure.

# EXHIBIT H



**From:** Munroe, Sianny smunroe@sga-youth.org
**Subject:** Re: Weekly Appointments In/Out Sheet
**Date:** June 15, 2026 at 11:04 AM
**To:** Jessica Lehman jessica.j.lehman@icloud.com, Struss, Georganne gstruss@sga-youth.org

Moving forward, please print out as directed to physically write in and out. This must also include stepping out to the restaurant or any time you have stepped out of the hotel.

Best,



*Sianny Munroe*

☎ 312-788-7094

✉ SMunroe@sga-youth.org

📍 3501 West 48ᵗʰ Place Chicago, IL 60632

🌐 smunroe@sga-youth.org

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Friday, June 12, 2026 2:59 PM
**To:** Munroe, Sianny <smunroe@sga-youth.org>; Struss, Georganne <gstruss@sga-youth.org>
**Subject:** Weekly Appointments In/Out Sheet

WARNING: Do not click links or open attachments unless you recognize the source of the email and know the contents are safe.

Attached to this email, completed digitally to preserve writing strength and quality (including legibility) due to hyper-mobility in thumbs.

Thanks so much,
Jessica Jamie Lehman
(317) 450-9525

Notice: This email contains confidential information, intended only for the individuals(s) named above. If you are NOT the intended recipient, any disclosure, forwarding, distribution, or copying of this e-mail is illegal. If you have received this communication in error, please notify us immediately by return e-mail, and delete the original message from your e-mail system. Thank you.

# EXHIBIT H

**From:** Munroe, Sianny smunroe@sga-youth.org 📎
**Subject:** Re: SGA - Warning Letter
**Date:** June 2, 2026 at 11:35 AM
**To:** Jessica Lehman jessica.j.lehman@icloud.com
**Cc:** Struss, Georganne gstruss@sga-youth.org, Arenas, Francisco farenas@sga-youth.org, Olivan, Jonathan jolivan@sga-youth.org

Hello Jessica,

I have connected our Program Director and Program Manager in this thread.

Best,



*Sianny Munroe*

📞 312-788-7094
✉ SMunroe@sga-youth.org
📍 3501 West 48ᵗʰ Place Chicago, IL 60632
🌐 smunroe@sga-youth.org

---

**From:** Jessica Lehman <jessica.j.lehman@icloud.com>
**Sent:** Monday, June 1, 2026 3:41 PM
**To:** Munroe, Sianny <smunroe@sga-youth.org>
**Cc:** Struss, Georganne <gstruss@sga-youth.org>
**Subject:** Re: SGA - Warning Letter

> WARNING: Do not click links or open attachments unless you recognize the source of the email and know the contents are safe.

Hi Sianny,
Thank you for sending this written notice dated June 1st, 2026. I am writing to acknowledge receipt and to clarify several points so that expectations, communication, and disability-related needs are fully understood
going forward.

## 1. Disability-Related Communication Needs & Program Rules

Because of my documented sensory and cognitive disabilities, I need program rules, expectations, and procedures to be provided in **clear written form**, including:

- all program rules and policies
- any agreements I have signed
- expectations regarding check-in/check-out
- expectations regarding communication with staff
- expectations regarding external providers
- expectations regarding staff entering or approaching my room
- expectations regarding mail, deliveries, and address use

Please provide copies of all written program rules, policies, and agreements so I can review them carefully and ensure full compliance.

## 2. Clarification of External Providers

Thresholds is my DMH-funded provider under the Front Door Diversion Program (FDDP) that will be my path to the PSH Bridge Subsidy for permanent housing as a person with disabilities. My understanding as of Friday:

- Thresholds staff are permitted to meet with me
- Thresholds is part of my official support team
- Thresholds is coordinating with you regarding my housing plan

To avoid any future confusion, I am requesting that SGA and Thresholds coordinate directly regarding any visits or meetings, consistent with

# EXHIBIT H

your letter's directive about inter-agency coordination. I have already
given Thresholds written permission for you to access my relevant records and communicate with them regarding my ongoing progress towards stability, let me know if you would like me to sign a release for SGA Youth & Family Services.

### 3. Interim Accommodation Request (Quiet Meeting Space)

Because of my sensory disability, I cannot safely meet with providers in loud or chaotic environments. As an
interim accommodation, I am requesting:
**A quiet, sensory-appropriate space where I can meet with Thresholds staff when needed.**
This is necessary for me to participate in services safely and effectively with the usual Rapid Rehousing being functionally inaccessible to me.

### 4. Clarification of Address Use & Deliveries

To avoid misunderstandings:

- I do not share the hotel's direct address with anyone except medical providers, disability-related service providers, or agencies that require it for safety or documentation.
- I need clarification on how to receive mail, packages, or documents from DFSS, Thresholds, or other providers.
- Please confirm the correct mailing address and procedure for receiving items and to give to future service providers.

### 5. Check-In / Check-Out Expectations

I will do my best to honor this requirement I am now learning of alerting staff when leaving or returning to the hotel property via SMS message to you. If Georgie would like to be included on these notifications
too, please let me know. I will message you both once I have returned from the Emergency Room.

### 6. Upcoming ADA/IHRA Accommodation Request to DFSS

Before the end of the 60-day period, I will be submitting a
**formal ADA/IHRA reasonable accommodation request** to DFSS regarding my disability-related need for a continuing non-congregate, sensory-appropriate placement while I complete the paperwork to join the Front Door Diversion Program (estimated
2–3 months). I will copy both you and the Law Department of Chicago on that request as a courtesy as it will be a crucial part of my transition plan.
This request will be separate from SGA's internal rules and will be directed to DFSS as the responsible public entity for coordinating ADA Title II requests.

### 8. My Intent Moving Forward

I want to continue working cooperatively with SGA staff and follow all program expectations. Clear written rules and disability-related accommodations will help ensure that I can do so safely and consistently.
Thank you for your time and for helping clarify these items.
Sincerely, Jessica Jamie Lehman
(317) 450-9525
jessica@jessicaj.studio

On Jun 1, 2026, at 2:55 PM, Munroe, Sianny <smunroe@sga-youth.org> wrote:

Hello Jessica,

Here is a copy of the one-time warning letter. As we were unclear on Friday on the unannounced visitor that asked for you by name, we are lifting the exit by tomorrow and encourage you to sign a release of information for Thresholds and SGA to connect. This caused a lot of back and forth concerning your safety and whereabouts and want to move forward with an understanding on how to move forward with services.

Best,

<Outlook-l1dv4jcs.png>

Notice: This email contains confidential information, intended only for the individuals(s) named above. If you are NOT the intended recipient, any disclosure, forwarding, distribution, or copying of this e-mail is illegal. If you have received this communication in error, please notify us immediately by return e-mail, and delete the original message from your e-mail system. Thank you.
<JL Warning Letter 6-1-26.pdf>

# EXHIBIT I

**Subject: Follow-Up After Emergency Temporary Restraining Order Service to Law Department — Formal ADA/IHRA Accommodation Request**

Dear Department of Family & Support Services (DFSS),

This request is a direct follow up to the Emergency Temporary Restraining Order motion I served on the City's Law Department on May 31st, 2026. That motion detailed systemic ADA violations by DFSS and its delegate agency SGA Youth & Family Services, including retaliation, failure to accommodate, and the absence of any functional interactive process.

After service of the TRO motion, the City's Law Department intervened. SGA withdrew its retaliatory termination of my hotel-based placement. Due to the chance of circumstance, I alerted Corporate Counsel that I did not intend to proceed with the emergency motion at that time and would follow up after I recovered from my illness on next steps, while fully reserving my rights to do so later if circumstances change.

Now, I am formally **requesting a reasonable accommodation under Title II of the ADA, Section 504 of the Rehabilitation Act, and the Illinois Human Rights Act (IHRA)**. This request is based on my disabilities: Autism Spectrum Disorder, Post-Traumatic Stress Disorder, Major Depressive Disorder, and Borderline Personality Disorder. As a transgender woman with a trauma disorder, this requires special consideration related to not being forced to share a room or sanitary facilities (such as showers) with cisgender peers for safety.

This matter is not routine. It arises directly from documented systemic failures that have already resulted in an attempted *Olmstead* violation, multiple psychiatric crises, and the involvement of the City's Law Department. I therefore expect this request to be handled by DFSS staff with the authority to implement the accommodations described below, consistent with the City's obligations under federal disability law.

---

# I. Current Status & Purpose of This Request

On April 28th, 2026, after weeks of failed placement attempts, the City (through SGA) placed me in a confidential hotel-based shelter program for survivors of gender-based violence. This placement has provided the private, non-congregate, sensory-controlled environment that my treating psychiatrist, Dr. Paula Mathewson, has documented as medically necessary to prevent psychiatric destabilization (see attached letters).

That program has a 60-day limit expiring June 26, 2026. I am asking DFSS to provide a continued hotel-based, non-congregate placement that meets my disability-related needs while I

# EXHIBIT I

complete the Front Door Diversion Program (FDDP) through Thresholds and transition to permanent housing via the Bridge Subsidy.

I am open to transferring to a different hotel before June 26 if DFSS identifies an appropriate alternative. My need is for the *environment* (private room, private bathroom, quiet, predictable), not a particular provider. I am also willing to receive case management remotely, which gives DFSS flexibility.

---

## II. Medical Necessity: Why a Hotel-Based, Non-Congregate Placement Is Required

Dr. Mathewson's letters (attached) state that congregate shelter settings are medically unsafe for me and would predictably result in psychiatric destabilization, including acute anxiety, dissociation, meltdowns, and suicidal ideation. She explicitly prescribes:

- A private, non-congregate, sensory-controlled sleeping environment
- 24/7 access to my sleeping space (no lockout hours)
- Use of noise-canceling headphones and phone for sensory regulation
- Predictable transitions and advance notice of changes
- Case management conducted only in quiet, sensory-safe spaces or remotely

A hotel room with a private bathroom and 24/7 access is the only type of placement that has consistently provided these conditions. Shared rooms, shared bathrooms, or any semi-congregate setting are medically contraindicated.

---

## III. Systemic Failures: Why the City's Standard Shelter Process Cannot Meet My Needs

The City's 311-based shelter intake system is structurally inaccessible to individuals with sensory and trauma-based disabilities. I have personally experienced the following systemic gaps across three separate placement attempts:

| Systemic Gap | How It Harmed Me |
| --- | --- |

# EXHIBIT I

| | |
|---|---|
| No way to request a reasonable accommodation | I could not submit my psychiatrist's letters or request a private room. |
| No advance notice of placement type | DFSS attempted to send me to a "non-congregate" shelter that was promised to my attorney that was actually a shared room with a shared bathroom. |
| No warning when transportation arrives | Vehicles arrived and left without notification, leaving me stranded overnight in an ER lobby. No ability to prepare for the transition of environments nor to even know they were there. |
| No written confirmation of placement details | I could not assess whether a placement was medically safe before being expected to board a vehicle. Repeatedly sent to sensory unsafe waiting rooms without warning. |
| No appeal, reconsideration, or interactive process | When a placement failed, the only instruction was to restart the 311 queue for the fourth time – which I did not do as it risked erasing all my disability information again. |
| No alternative intake pathway (online, text, in-person) | My sensory and cognitive disabilities require predictable, low-stimulus communication and the ability to review information in writing before making decisions about placement. The 311 system provides no written information about the placement |

# EXHIBIT I

environment, no way to review or confirm details, and no mechanism to submit documentation or request accommodations. Without an alternative intake pathway that allows written communication, I cannot meaningfully assess whether a placement is medically safe or participate in the Interactive Process.

Because of these systemic failures, the Interactive Process has never meaningfully occurred. Each attempt ended in a psychiatric crisis, ER visits, or self-funded hotel stays to avoid harm. The City's internal "flags" for disability are not an ADA process – there is no approval or denial of an accommodation request, no way to submit documentation, no appeal, and no interactive process at any stage.

I am not challenging the existence of a queue; I am stating that I am unable, because of my disabilities, to stand in it. A process that repeatedly erases disability-related accommodation requests is not a remedy – **it is a denial of access.**

## IV. Past Placement Attempts & The Risk of Unnecessary Institutionalization

Between April 8 and April 28, 2026, the City attempted three separate 311-driven placements. Each resulted in:

- Being routed to congregate waiting rooms (SPARC) that triggered nonverbal episodes and a trauma response (April 9)
- Placement in a shared-room congregate shelter (A Safe Haven) where I was denied safe showering, misgendered, and locked out during the day – leading to a 988 call for suicidal ideation (April 11)
- Being offered a "non-congregate" placement that was actually a shared room with shared bathroom (Primo Center)
- Erasure of all my disability information from the 311 system when my service request was reactivated

On April 9, 2026, the City's lack of accessible shelter inventory led UChicago Medicine to attempt to discharge me to an institutional group home – the only placement they could find.

# EXHIBIT I

That attempted institutionalization occurred solely because the City had no community-based, sensory-safe shelter option. This violates the *Olmstead* integration mandate and Title II of the ADA. *See Colbert v. Pritzker*, 2013 WL 5405656 (N.D. Ill. Sept. 26, 2013) (State cannot avoid ADA obligations by delegating services to private facilities).

**This hotel-based placement is the only thing preventing another such institutionalization attempt.**

---

## V. Geographic Access to Essential Services

Chicago's essential services – medical care, benefits offices, case management, crisis stabilization (Thresholds, Trilogy), and legal aid – are geographically centralized downtown or near CTA rail lines. My mobility and sensory disabilities make long, multi-transfer trips unsafe. I require a hotel placement downtown or within one mile of an accessible CTA train line to ensure predictable access to:

- Medical and psychiatric appointments
- My prospective future landlord (for Bridge Subsidy paperwork)
- Thresholds case management
- Benefits offices (SSA, HUD)

This is a functional access need, not a preference.

---

## VI. Strained Relationship with Current Provider

Due to the earlier retaliatory termination attempt (issued May 29, 2026) and SGA's refusal to engage in the interactive process, my working relationship with my current providers has been significantly strained. While staff have ceased inappropriate actions, the rupture in trust has made it difficult for me to fully engage with services. Beginning a transition search now allows DFSS to identify a hotel-based setting where I can fully participate in services and maintain stability, well before the June 26 deadline.

---

## VII. What I Am Requesting – Clearly & Narrowly

# EXHIBIT I

I ask DFSS to provide a hotel-based, non-congregate placement with the following specifications:

1. Private bedroom with private bathroom and shower (no shared facilities)
2. 24/7 access (no lockout hours)
3. Located downtown or within 1 mile of CTA train line (River North, Gold Coast, Streeterville, or comparable central neighborhood)
4. Preserves my homeless status for FDDP and Bridge Subsidy eligibility
5. Permits me to meet with case managers or providers in my room or an appropriate hotel space
6. Allows me to receive mail and disclose the address to service providers (not confidential)

I am open to relocating before June 26th if DFSS identifies an appropriate alternative. I require advance notice to prepare for the environmental transition due to my sensory and cognitive disabilities.

---

## VIII. Accommodation Process & Deadlines

Under applicable disability laws, DFSS is required to engage in the interactive process and provide a written determination on my accommodation request within a reasonable time. Please:

1. Identify the DFSS staff member responsible for processing ADA accommodation requests.
2. Provide a timeline for reviewing my request and identifying a placement by end of business on June 15th, 2026.
3. Advise on next steps before June 26th, 2026.

**Note: There is a pending offer to the City's Law Department (expiring June 12th, 2026) that may resolve the need for DFSS to act on this request. However, this accommodation request remains pending regardless. I'm giving a longer response deadline to give DFSS and the Law Department flexibility to coordinate on next steps.**

I am committed to working collaboratively. Please respond in writing by the end of business on June 15th, 2026, to ensure my safety and stability before the current placement expires on June 26th, 2026.

Thank you for your attention to this matter.

Sincerely,

# EXHIBIT I

/s/ Jessica Jamie Lehman

Jessica Jamie Lehman
(317) 450-9525
jessica@jessicaj.studio

Attachment:

- Dr. Paula Mathewson letters (March 18, 2026; April 2, 2026)

## *See Exhibit A

# Fax Confirmation Report EXHIBIT I



Sent via www.fax.plus

Fax.Plus

---

**Date:** Jun 06, 2026 (Sat)
**Time:** 05:05:46 PM (UTC-05:00)

**From:** +1 223-217-5138 (Jessica Lehman)
**To:** +1 312-743-0400

**Pages Sent:** 11
**Duration:** 7 min, 40 sec

**Status:** Successfully Sent

### First Page Thumbnail



Validate the authenticity of this page by scanning the following QR code:

★ An official website of the City of Chicago   Here's how you know    EXHIBIT J      English ▼ →

# ★ CHICAGO

**Accessibility**

Search      🔍

**I WANT TO**     **PROGRAMS AND INITIATIVES**     **GOVERNMENT**     **ABOUT**

# Mayor's Office for People with Disabilities

Home / Departments / Mayor's Office for People with Disabilities / Accessibility Compliance / Services / City of Chicago Notice of Nondiscrimination

# City of Chicago Notice of Nondiscrimination

**City of Chicago Notice of Nondiscrimination based on Disability under the Americans with Disabilities Act and the Rehabilitation Act**

By the requirements of Title II of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Rehabilitation Act of 1973, as amended ("Rehabilitation Act"), the City of Chicago does not discriminate against qualified individuals with disabilities based on disability in any of its services, programs, or activities.

**Employment:** The City of Chicago does not discriminate based on disability in its hiring or employment practices and complies with all regulations promulgated by the U.S. Equal Employment Opportunity Commission under Title I of the ADA and the Rehabilitation Act.

**Effective Communication:** The City of Chicago will, upon request, provide appropriate aids and services to ensure effective communication for qualified persons with disabilities so they can participate in the City of Chicago's programs, services, and activities. Examples of auxiliary aids and services include but are not limited to qualified sign language interpreters, captioning, assistive listening devices, communication access real-time translation (CART), electronic documents, Braille documents, large print documents, note takers, and audio descriptions.

Anyone who requires an auxiliary aid or service to participate in a program, service, or activity of the City of Chicago should contact the department or agency responsible for that program, service or activity. Requests for auxiliary aids or services should be made as early as possible but no later than 72 hours before the scheduled program or activity. Although auxiliary aids and services may not be available if requested less than 72 hours before an event, the City will attempt to make an effective auxiliary aid or service available even if this deadline is not met.



**Modifications to Policies and Procedures:** The City of Chicago will make all reasonable modifications to policies and procedures to ensure that people with disabilities have an equal opportunity to enjoy all of its programs, services and activities.  For example, individuals with service animals are welcomed in City of Chicago offices, even where pets are generally prohibited.

Anyone who requires a modification of policies or procedures to participate in a program, service, or activity of the City of Chicago, should contact the department or agency responsible for the program, service or activity.

**Surcharges**: The City of Chicago will not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the cost of providing auxiliary aids/services or reasonable modifications of policy.

Neither the ADA nor the Rehabilitation Act requires the City of Chicago to take any action that would fundamentally alter the nature of its programs or services, or impose an undue financial or administrative burden.

**Complaints:** Complaints that a program, service, or activity of the City of Chicago is not accessible to persons with disabilities, is failing to provide appropriate auxiliary aids and services or has failed to make reasonable modifications to its policies and procedures to allow participation by individuals with disabilities should be directed to the Commissioner of the Mayor's Office for People with Disabilities for the City of Chicago, the City's designated ADA/Rehabilitation Act Coordinator.  The City has established procedures for filing complaints under the ADA and the Rehabilitation Act.  These procedures are posted on the Mayor's Office for People with Disabilities website.

Contact information for the City of Chicago's ADA/Rehabilitation Act Coordinator:

**Rachel Arfa, Commissioner**
Mayor's Office for People with Disabilities
City of Chicago
121 N. LaSalle Street, Suite 104
Chicago, Illinois 60602

Phone: 312.744.7209
TTY: 312.744.4964
Fax: 312.744.3314
Email: Rachel.Arfa@cityofchicago.org

Home    Disclaimer    Privacy Policy    Web Standards    Site Credits    Site Map    Contact Us    Press Room

 City of Chicago

Copyright © 2010 - 2026 City of Chicago



# EXHIBIT J

 **CHICAGO**

**Accessibility**

| Search | 🔍 |

**I WANT TO**     **PROGRAMS AND INITIATIVES**     **GOVERNMENT**     **ABOUT**

# Mayor's Office for People with Disabilities

Home / Departments / Mayor's Office for People with Disabilities / Accessibility Compliance / Services / City of Chicago Grievance Procedure

# City of Chicago Grievance Procedure

## City of Chicago Grievance Procedure Under the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973

This Grievance Procedure is established to meet the requirements of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Rehabilitation Act of 1973, as amended ("Rehabilitation Act"). It may be used by anyone who wishes to file a complaint alleging discrimination based on disability in the provision of services, activities, programs, or benefits by the City of Chicago. The City of Chicago's Personnel Policy governs employment-related complaints of disability discrimination.[1]

- Where possible, complaints should be in writing and should contain the name, address, telephone number, and email address of the person filing the complaint, along with a description of the alleged act[s] of discrimination. If a complainant is unable to put his/her complaint in writing, he/she can file it by telephone, in-person statement, or using an appropriate auxiliary aid or service provided by the City of Chicago.
- Upon request, the City of Chicago will provide auxiliary aids and services to allow people with disabilities to file complaints.
- Complaints should be filed within sixty (60) calendar days from the date on which the complainant becomes aware of the alleged violation.
- As appropriate, the ADA/Rehabilitation Act Coordinator or her designee will investigate the complaint. At the discretion of the ADA/Rehabilitation Act Coordinator or her designee, the investigation may be informal. The investigation will be thorough and will afford interested persons and their representatives, if any, an opportunity to submit evidence relevant to the complaint.

EXHIBIT J

- The ADA/Rehabilitation Act Coordinator or her designee will issue a written determination as to the validity of the complaint and a description of the resolution, if any, no later than thirty (30) days after the complaint is submitted in a format that is accessible to the complainant. If the complainant fails to cooperate with the investigation, the ADA/Rehabilitation Act Coordinator may extend the time to issue the determination or may dismiss the complaint without determination.

- The complainant can request a reconsideration of the case if he/she is dissatisfied with the resolution. The request for reconsideration must state the reason the complainant disagrees with the resolution and must be made no more than fifteen (15) days after the determination is issued. The ADA/Rehabilitation Act Coordinator shall issue a written response to the request for reconsideration within thirty (30) days of the request in a format that is accessible to the complainant.

- The ADA/Rehabilitation Act Coordinator shall maintain all files and records related to the complaints filed under this grievance procedure. All written comp̲ ⬜ English ▼ → ADA/Rehabilitation Act Coordinator or her designee as well as all .......................... , evidence, and other documents, including those related to requests for reconsideration will be retained for at least three (3) years.

- The availability and/or use of this grievance procedure does not prevent a person from filing a complaint with another government agency, including but not limited to the U.S. Department of Justice. The pursuit of other remedies, including filing a complaint with a different agency, will not impact the resolution of the complaint filed with the ADA/Rehabilitation Act Coordinator.

[1] City of Chicago employees and job applicants must file employment-related discrimination complaints with the Department of Human Resources using the complaint procedures available under the City of Chicago Personnel Policy.

Complaints must be submitted to the Commissioner of the Mayor's Office for People with Disabilities, the designated ADA/Rehabilitation Act Coordinator for the City of Chicago, using the following contact information:

**Rachel Arfa, Commissioner**
Mayor's Office for People with Disabilities
City of Chicago
121 N. LaSalle Street, Suite 104
Chicago, Illinois 60602

Phone: 312.744.7209
TTY: 312.744.4964
Fax: 312.744.3314
Email: Rachel.Arfa@cityofchicago.org

PROPOSED ORDER

Upon consideration of Plaintiff's Motion for Temporary Restraining Order With Notice and Preliminary Injunction, and for good cause shown, it is hereby ORDERED that:

1. Plaintiff's Motion for Temporary Restraining Order is GRANTED.

2. Defendant City of Chicago is TEMPORARILY RESTRAINED from terminating Plaintiff Jessica Lehman from DFSS-funded shelter services or otherwise removing her from the City's homelessness response system pending a preliminary injunction hearing.

3. Defendant City of Chicago shall immediately provide Plaintiff with an ADA-compliant, non-congregate, sensory-safe hotel room as an interim placement, with a private bathroom and 24-hour access to the facility except for reasonable cleaning or maintenance periods, located in the downtown Chicago area, or within one mile of accessible public transit in reasonable proximity to downtown, until further order of this Court.

4. Defendant City of Chicago shall provide Plaintiff with a written mailing or pickup address for program-related correspondence and housing applications. The City may designate the hotel used for Plaintiff's interim non-congregate placement as this address. The City shall also ensure that Plaintiff has access to a quiet, private, sensory-safe meeting location for any required in-person meetings with case managers or housing navigators, which may be located at said hotel if appropriate.

5. This Temporary Restraining Order shall remain in effect until the Court resolves Plaintiff's forthcoming request for appointment of counsel and sets a schedule for further proceedings on Plaintiff's Motion for Preliminary Injunction. The Court finds that

Plaintiff is proceeding in forma pauperis and that requiring security would effectively deny her access to judicial review. The bond requirement of Federal Rule of Civil Procedure 65(c) is therefore waived.

6. Plaintiff shall serve this order on Defendant immediately.

ENTERED: this _____ day of _____, 2026

United States District Judge

PROPOSED ORDER

Upon consideration of Plaintiff's Motion for Temporary Restraining Order With Notice and Preliminary Injunction, and for good cause shown, it is hereby ORDERED that:

1. Plaintiff's Motion for Temporary Restraining Order is GRANTED.

2. Defendant City of Chicago is TEMPORARILY RESTRAINED from terminating Plaintiff Jessica Lehman from DFSS-funded shelter services or otherwise removing her from the City's homelessness response system pending a preliminary injunction hearing.

3. Defendant City of Chicago shall immediately provide Plaintiff with an ADA-compliant, non-congregate, sensory-safe hotel room as an interim placement, with a private bathroom and 24-hour access to the facility except for reasonable cleaning or maintenance periods, located in the downtown Chicago area, or within one mile of accessible public transit in reasonable proximity to downtown, until further order of this Court.

4. Defendant City of Chicago shall provide Plaintiff with a written mailing or pickup address for program-related correspondence and housing applications. The City may designate the hotel used for Plaintiff's interim non-congregate placement as this address. The City shall also ensure that Plaintiff has access to a quiet, private, sensory-safe meeting location for any required in-person meetings with case managers or housing navigators, which may be located at said hotel if appropriate.

5. This Temporary Restraining Order shall remain in effect until the Court resolves Plaintiff's forthcoming request for appointment of counsel and sets a schedule for further proceedings on Plaintiff's Motion for Preliminary Injunction. The Court finds that

Plaintiff is proceeding in forma pauperis and that requiring security would effectively deny her access to judicial review. The bond requirement of Federal Rule of Civil Procedure 65(c) is therefore waived.

6. Plaintiff shall serve this order on Defendant immediately.

ENTERED: this _____ day of _____, 2026

United States District Judge