**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JESSICA LEHMAN,

                      Plaintiff,

            v.

CITY OF CHICAGO,

                      Defendant.

No. 1:26-cv-07202

Hon. Joan Lefkow
Hon. David Weisman

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Plaintiff Jessica Lehman, who has multiple disabilities and has been experiencing homelessness since April, brings this action under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, asserting claims against the City for failure to accommodate, intentional discrimination, and retaliation. The accommodation at issue is a private room and bathroom to accommodate her sensory processing disabilities.

As Plaintiff admits in the Complaint, the City's program for survivors of gender-based violence ("GBV") placed her in a private room with a private bathroom that meets her disability needs. But Plaintiff asserts that the City violates the ADA and the Rehabilitation Act by failing to provide equivalent housing through the homeless shelter system itself. This is incorrect; to the extent Plaintiff asks the Court to order the City to restructure its shelter system, she seeks a fundamental alteration of the program that the ADA does not require. Plaintiff also alleges that the City's lack of response to her June 6, 2026, accommodation request before she filed this lawsuit on June 18, 2026, was a refusal to extend her placement in the GBV program and a refusal to participate in the interactive process mandated by the ADA. But the ADA requires only a response within a reasonable time, and Plaintiff's placement was ultimately extended. Plaintiffs' own exhibits show that the City worked to identify a placement for her.

Plaintiff's other claims also fail. Her intentional discrimination claim fails because she does not allege that anyone denied her a service because of her disability. Her retaliation claim fails because the termination notice she complains of was rescinded, and she does not tie it to her protected activity. For these reasons, further set forth below, the Complaint should be dismissed.

## BACKGROUND

According to the Complaint, Plaintiff is a 24-year-old autistic transgender woman who suffers from several disabilities, including a severe sensory processing disorder. Dkt. 13, ¶ 2. She is also a survivor of gender-based violence. Id. ¶ 12. Between April 8 and April 28, 2026,

Plaintiff experienced homelessness and encountered difficulties in accessing housing through the City's shelter system. *Id.* The City, through its Department of Family and Social Services ("DFSS"), informed Plaintiff that no private rooms were available and noted that private space in the homeless shelter system is "extremely limited." *Id.* ¶¶ 37–38. On April 28, Plaintiff was placed in a confidential hotel location through the City's program for GBV survivors. *Id.* ¶ 5. The hotel program is operated by SGA, one of the City's delegate agencies for the GBV hotel program. *Id.* Plaintiff states that her placement through the GBV hotel program "met her sensory and trauma needs." *Id.* ¶ 12.

On May 28, Plaintiff informed SGA that she intended to request accommodations for her disabilities. Dkt. 13, Ex. E, Pl. Decl. ¶ 2. On May 29, an SGA case manager informed Plaintiff that her GBV hotel placement would be terminated effective June 2, 2026, due to a "major breach of confidentiality": the disclosure of the confidential hotel location to a third party. *Id.* ¶ 3. The termination notice was subsequently withdrawn. Dkt. 13, ¶¶ 2, 7.

On June 6, Plaintiff sent an accommodation request to DFSS, asking that her GBV hotel placement, which was set to expire on June 26, be extended. *Id.* ¶¶ 7, 40; *id.*, Ex. I, Accommodation Request at 1.[1] At the time Plaintiff filed her Complaint on June 18, DFSS had not yet responded to her request. Dkt. 13, ¶ 41. She moved for a temporary restraining order on the basis that her placement would expire on June 26. Dkt. 5, Pl. Mot. for TRO. In response to her motion, the City indicated that DFSS was working with her on her accommodation request and had informed her she would be able to remain in her GBV hotel placement until she was able

---

[1] The Court may consider Plaintiff's exhibits to her Complaint on this motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), and "independently examine and form its own opinions about" them, *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "If the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief." *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 753–54 (7th Cir. 2002).

to arrange stable housing. Dkt. 17, Def. TRO Resp. at 2 & Exs. A & B, DFSS Correspondence. The Court denied her motion for a temporary restraining order without prejudice. Dkt. 20.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts may also consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

## ARGUMENT

Plaintiff fails to state a claim under the ADA or Rehabilitation Act. Her claim that the City did not accommodate her fails because her allegations show that the City did provide her with the requested accommodation. She also does not plausibly allege that the City failed to engage in the required interactive process. Plaintiff's intentional discrimination claim fails because she does not allege that the City denied her any service because of her disabilities. Plaintiff's retaliation claim fails because she has not alleged that she suffered an adverse action or connected the alleged adverse action to her accommodation request. Lastly, the Court should reject Plaintiff's request for damages because she alleges no facts suggesting that the City acted with deliberate indifference, as required to claim damages under the relevant statutes.

## I.     Plaintiff Has Not Alleged A Claim for Discrimination.

To state a claim under Title II or Section 504, Plaintiff must allege that she is a qualified individual with a disability and that "the defendant either failed to reasonably accommodate the plaintiff's disability or intentionally discriminated against the plaintiff because of her disability."

3

*Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001); 42 USC § 12132 (discrimination under the ADA); 29 USC § 794 (non-discrimination under Rehabilitation Act). Plaintiff fails to allege either type of violation.

### A.     Plaintiff has not alleged a failure to accommodate.

To allege a failure to accommodate theory, a plaintiff must plead that the requested accommodation is both necessary and reasonable.  But the ADA and the Rehabilitation Act require accommodations "only . . . when necessary to avoid discrimination on the basis of a disability," and "[a]ccommodations must also be 'reasonable.'" *Novak v. Hall*, 139 F. Supp. 3d 901, 910 (N.D. Ill. 2015) (quoting *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006)).[2] And an accommodation that requires a "fundamental alteration in the nature of a program" is not reasonable. *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 410 (1979).

Plaintiff advances three failure-to-accommodate theories. First, she alleges that the City and its delegate agencies failed to provide her a private room and private bathroom through the City's shelter system, and that system-wide modification of the City's congregate shelter system is required to provide an accommodation that would satisfy the requirements of the ADA and Rehabilitation Act. Second, she alleges the City and SGA failed to accommodate her by refusing to extend her placement in the GBV hotel program beyond June 26. Finally, Plaintiff alleges the City failed to engage in an interactive process. Each fails on the face of the Complaint.

### 1.     Plaintiff acknowledges that she received the requested accommodation and no further modifications are required.

First and foremost, the accommodation Plaintiff requested—a private room and bathroom—has been provided. As Plaintiff acknowledges in the Complaint, her placement

---

[2] Although the Rehabilitation Act "does not contain any express language regarding necessity," courts have read the Act "as containing a necessity requirement." *Wis. Cmty. Servs.*, 465 F.3d at 751 (citing *Alexander v. Choate*, 469 U.S. 287 (1985)).

4

through the GBV hotel program "met her sensory and trauma needs." Dkt. 13, ¶ 12. Because the City has provided the requested accommodation through a referral to the GBV program, no further accommodation is necessary within the meaning of the ADA or Rehabilitation Act.

It does not matter that the accommodation was provided via referral to the GBV hotel program rather than directly through the City's shelter system. The City provides homeless services through several coordinated programs, including the GBV hotel program. "[P]rogram definition is a matter of law," and what constitutes a "program . . . should not be defined too narrowly." *G.P. v. Claypool*, 466 F. Supp. 3d 875, 888 (N.D. Ill. 2020). Indeed, The ADA's implementing regulations contemplate alternate methods of complying with ADA requirements, including "delivery of services at alternate accessible sites" and "other methods that result in making its services . . . readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(b)(1). In *Claypool*, for example, the plaintiff argued that the CPS school system was inaccessible because students with mobility disabilities could not access every building or facility in the system. But the court held that by transferring the plaintiff, who used a wheelchair, to an accessible facility, CPS provided access to the program. CPS had "delivered services at alternate accessible sites" and thus "satisf[ied] the flexible standards that apply for programs offered at existing facilities." 466 F. Supp. 3d at 890.

Here, likewise, DFSS has provided Plaintiff access to City-funded shelter by referring her to the GBV program, and thus an accommodation within the shelter system itself is not required. *See G.P. v. Chicago Bd. of Educ.*, No. 17-CV-1891, 2021 WL 681120, at *1 (N.D. Ill. Feb. 22, 2021) ("[B]ecause the transfer offer provided [the plaintiff] with program access, the Defendant had no legal obligation to further modify its policies or facilities."). Plaintiff's contention that the accommodation of a private room and private bathroom must come through the City's shelter

system rather than through the GBV program is also not reasonable, as she asks the Court to order the City to restructure its congregate shelter system to provide such accommodations. *See* Dkt. 13, ¶¶ 68–69. The ADA does not reach so far.

Courts interpret "reasonable accommodation" by analogy to the same phrase in the Rehabilitation Act. *E.g.*, *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 846 (7th Cir. 1999) (noting that, generally, "this and other circuits interpret § 504 of the Rehabilitation Act and Title II of the ADA as coextensive"). An accommodation is unreasonable if it either imposes "undue financial and administrative burdens" or requires a "fundamental alteration in the nature of a program." *Se. Cmty. Coll. v. Davis*, 442 U.S. at 410, 412; *see also* 28 C.F.R. § 35.130(b)(7) (accommodations are not reasonable if "the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity").

Plaintiff's own allegations show that her demand fails that standard. She alleges that "DFSS . . . admitted that no private rooms were available" and that "there is currently no functional shelter bed in the entire City of Chicago system that meets Plaintiff's disability-related needs." Dkt. 13, ¶¶ 38–39. Plaintiff also alleges that DFSS indicated that private spaces in the shelter system "are extremely limited." *Id.* ¶ 38. The City's Guidance on safely discharging and placing people experiencing homelessness into City of Chicago shelters, attached as an exhibit to the Complaint, confirms as much: "Due to limited resources, the city shelter system does not have enough available beds to serve every adult experiencing unsheltered homelessness" and "the City-funded shelters cannot support patients with post-acute care needs." Dkt. 13, Pl. Ex. D, Guidance at 1. The guidance accordingly sets out a detailed process for hospitals discharging individuals who cannot stay at City-funded shelters, including by coordinating with the State of Illinois or directly with living facilities appropriate for those individuals. *Id.* at 5.

This acknowledgement that certain individuals cannot be accommodated in the shelter system itself and must be referred to other resources indicates that the accommodations Plaintiff seeks would be a fundamental alteration of the shelter system. Granting her requested relief would require DFSS and its delegate agencies to start offering private accommodations that they do not currently offer, and to do so with resources they do not have. That is a "fundamental alteration in the nature of" the City's homeless services, and it is therefore not a reasonable accommodation within the meaning of the ADA and the Rehabilitation Act.

  **2.**  **Plaintiff has not alleged a failure to accommodate based on the lack of response to her accommodation request between June 6 and June 18.**

Plaintiff attempts to base a failure to accommodate claim on the lack of response to her June 6 accommodation request, characterizing it as a refusal to provide an extension of her placement beyond June 26. Dkt. 13, ¶ 41. But the allegations in the Complaint do not support her construal of this as a "constructive denial." *Id.* Plaintiff simply had not heard back from the City or SGA by June 18, when she filed her lawsuit.

Plaintiff alleges she submitted a request for accommodation on June 6, 2026, asking DFSS to extend the 60-day limit on her GBV hotel placement that would have expired on June 26, 2026, and continue providing a hotel-based, non-congregate placement. *Id.* ¶ 40; Accommodation Request at 1. Plaintiff filed her Complaint twelve days later, on June 18, 2026. Dkt. 13 at 1.[3] Plaintiff alleges that DFSS had not responded to her accommodation request at that time. *Id.* ¶ 41. But this lack of response does not constitute a refusal of the extension request because there were still several days before Plaintiff's placement was set to expire.[4] That

---

[3] Plaintiff's Complaint is docketed at Docket No. 1 and Docket No. 13. Defendant cites to Docket No. 13 throughout the Motion. The Complaint at Docket No. 1 was filed on June 18, 2026.

[4] Although the City's motion to dismiss is limited to the allegations in the Complaint and the attached exhibits, as explained in the City's response to Plaintiff's TRO motion, Plaintiff's placement in the GBV hotel program was ultimately extended beyond June 26. Def. TRO Resp. at 2.

Plaintiff requested DFSS respond by June 15, 2026, *id.*, does not change this conclusion; the City required a reasonable amount of time to respond, regardless of Plaintiff's requested deadline.

> **3.** **Plaintiff does not allege a failure to engage in the interactive process.**

As for Plaintiff's allegations that the City failed to engage in an interactive process, *see id.*, that theory fails twice over. First, "there is no independent cause of action under the ADA for breakdown of the interactive process," and "liability only arises when the failure to participate in the interactive process results in a failure to identify and offer an appropriate accommodation." *Rogers v. W. Governors Univ.*, No. 23-cv-3774, 2025 WL 561355, at *9 (S.D. Ill. Feb. 20, 2025) (quoting *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021)). An appropriate accommodation was identified and provided to Plaintiff; thus she cannot succeed on a claim for failure to engage in the interactive process. *See Cesca v. W. Ill. Univ. Bd. of Trs.*, No. 4:23-cv-04043, 2024 WL 152812, at *10 (C.D. Ill. Jan. 15, 2024) ("[A] breakdown of the interactive process 'is actionable if it prevents identification of an appropriate accommodation for a qualified individual.'") (quoting *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014)).

Second, the allegations do not point to any "'failure to participate in good faith,' obstruction or delay, failure to communicate, or withholding of information within one party's sole control." *Cesca*, 2024 WL 152812, at *10 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). The fact that SGA and DFSS had not responded to Plaintiff's accommodation request within twelve days, while Plaintiff remained housed through the GBV hotel program, does not plausibly suggest that the City refused to engage in an interactive process. *Cf., e.g., Johnson v. Brennan*, No. 17 C 8878, 2020 WL 1139253, at *7 (N.D. Ill. Mar. 9, 2020) (defendant did not engage in the interactive process where it "completely ignored multiple requests for an accommodation for approximately five months"). Plaintiff's own exhibits show

the opposite. The City did engage with Plaintiff, repeatedly, in an attempt to accommodate her. Exhibit C reflects that after counsel contacted DFSS on Plaintiff's behalf, DFSS responded the next business day what was available, advised counsel it would continue checking the City's other non-congregate shelters and that Plaintiff "would be a priority for being placed there," and reported that it was "investigating a gender-based violence specific resource to see if there is a private space available there." Dkt. 13, ¶¶ 32, 37–38; Dkt. 13, Ex. C. That investigation ultimately led to the placement Plaintiff received eight days later. Id. ¶ 5. Documents attached to a complaint control over contrary characterizations within it. Thompson, 300 F.3d at 753–54.

In sum, Plaintiff fails to allege that the City did not engage in the interactive process.

**B. Plaintiff has not alleged an intentional discrimination claim.**

To prevail on a disability discrimination claim, a plaintiff must show that (1) she is a qualified individual with a disability; (2) she was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of her disability. Lacy, 897 F.3d at 853. Plaintiff's allegations show that the second and third requirements of her claim cannot be met.[5]

Plaintiff cannot succeed on her discrimination claim because she has not been denied access to City-funded shelter. Where a plaintiff is "afforded program access," there is "no discrimination and therefore no need for further modifications." Chicago Bd. of Educ., 2021 WL 681120, at *5. And it is not disability-related discrimination to deny Plaintiff accommodations— a private room with a private bathroom—that simply are not available to anyone through the shelter system, including both individuals with and without disabilities. "Title II of the ADA and Section 504 of the Rehabilitation [Act] do not require public entities to employ any and all

---

[5] For purposes of this motion to dismiss, the City accepts as true Plaintiff's allegation that she is a qualified individual with a disability under the ADA and Rehabilitation Act.

means to accommodate disabled individuals . . . [t]hey merely require necessary and reasonable accommodations to afford the individual an equal opportunity to enjoy the public entity's benefits, services, or programs." *Novak*, 139 F. Supp. 3d at 916. Plaintiff's accommodation requests do not seek equal access to the resources available to individuals without disabilities through the shelter system; instead she seeks additional resources that are not generally provided through the shelter system at all. Dkt. 13, ¶¶ 37–39.

Absent a failure to accommodate, a claim under the ADA and the Rehabilitation Act requires a showing of intentional discrimination. *See Dadian*, 269 F.3d at 838 ("A violation of either act can be established by showing . . . the defendant either failed to reasonably accommodate the plaintiff's disability or intentionally discriminated against the plaintiff because of her disability."). Plaintiff does not allege that any individual at SGA or DFSS denied her any service or accommodation because of her disability; to the contrary, she alleges that she could not initially be accommodated because of the lack of an available room of the type that would satisfy her request. Dkt. 13, ¶¶ 23, 30, 34, 37–39. Plaintiff alternatively frames her discrimination claim as being denied an accommodation made available to GBV survivors, but this claim fails because Plaintiff was provided a placement through the GBV hotel program, on the same terms as other participants. *Id.* ¶ 12. Plaintiff also asserts that SGA's denial of her request to extend her time in the program was discriminatory because SGA has granted such extensions to non-disabled program participants. *Id.* ¶ 64. But as explained above in Section I.A.2, Plaintiff alleges only that no one had responded to her request for accommodation by the time she filed her Complaint twelve days later, which does not amount to a denial of her request. *Id.* ¶¶ 40–41.

## II. Plaintiff Has Not Alleged A Retaliation Claim.

Plaintiff's retaliation claim also fails. Plaintiff alleges that an SGA staff member issued her a termination notice via text message on May 29, 2026, the day after Plaintiff informed SGA

10

that she planned to seek a reasonable accommodation. Pl. Decl. ¶ 3. Plaintiff asserts that, based on the close timing of these two events, the termination must have been issued in retaliation for stating her intent to pursue a reasonable accommodation. Plaintiff cannot succeed on her retaliation claim because the termination notice does not constitute an adverse action and, even if it did, Plaintiff has not connected the alleged adverse action to her accommodation request.

To state a claim of retaliation under the ADA and the Rehabilitation Act, Plaintiff must allege (1) that she "engaged in statutorily protected activity," (2) that she "suffered adverse action," and (3) a "causal connection between the two." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014) (citation omitted); 42 U.S.C. § 12203 (retaliation under the ADA). The adverse action must be "materially adverse," meaning it must be "more than a mere inconvenience." *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001) ("not everything that makes [a person] unhappy is an actionable adverse action") (citations omitted); *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (plaintiff failed to show that his former employer took "any materially adverse actions" against him).

### A.     Plaintiff has not alleged that she has suffered an adverse action.

Plaintiff has not pled—nor can she plead—that she has suffered an adverse action for purposes of her retaliation claim. Plaintiff admits in her Complaint that the termination notice issued via text message on May 29, 2026, and intended to go into effect on June 2, 2026, was rescinded. Dkt. 13, ¶¶ 2, 7. "[U]nfulfilled threats that result in no material harm cannot be considered an adverse [] action." *Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 662 (N.D. Ill. 2020) (quoting *Dunn v. Wash. Cnty. Hosp.*, 429 F.3d 689, 692 (7th Cir. 2005)); *see also Riley v. City of Kokomo*, 909 F.3d 182, 191 (7th Cir. 2018) (rejecting plaintiff's ADA and Title VII retaliation claim because she "suffered no ill consequences as a result of the [eviction warning]" and "continued to reside in her unit"). For the purposes of retaliation claims in the

11

housing context, adverse actions include eviction, filing a suit for eviction, or limiting access to certain facilities or amenities. *See Hobbs v. Goncharko*, No. 25 CV 3398, 2025 WL 2532561, at *7 (N.D. Ill. Sept. 3, 2025) ("[e]viction qualifies as adverse action"); *Gilvin v. Veneto Tuscan LLC*, No. 2:26-CV-00370, 2026 WL 594673, at *2 (D. Nev. Mar. 3, 2026) ("initiating eviction" was an adverse action); *Mehta v. Beaconridge Improvement Ass'n*, 432 F. App'x 614, 617 (7th Cir. 2011) (limiting a plaintiff's access to facilities including the pool, clubhouse, and tennis court was an adverse action). Here, the rescinded termination notice does not rise to the level of "material" harm required to sufficiently plead a retaliation claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68–70 (2006) (stating that "material adversity" of a challenged action is part of retaliation analysis in order to "separate significant from trivial harms"). Because Plaintiff does not allege any facts that would establish an adverse action, her claim fails. *See Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999).

> **B.     Plaintiff has not alleged a causal connection between an adverse action and her protected activity.**

Even if the rescinded termination notice issued to Plaintiff were an adverse action, her retaliation claim still fails because she has not alleged a causal connection between the alleged protected activity and the adverse action.[6] To successfully allege a causal connection, a plaintiff must allege that the defendant "would not have taken the adverse action but for the protected expression." *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (quoting *Johnson v. City of Fort Wayne*, 91 F.3d 922, 939 (7th Cir. 1996)) (internal quotation marks omitted); *see also Terry v. DuPage Hous. Auth.*, No. 21 C 5050, 2024 WL 4679094, at *3 (N.D. Ill. Nov. 5, 2024) (dismissing retaliation claim where allegations failed to support conclusion that

---

[6] For purposes of this motion to dismiss, Defendant accepts as true Plaintiff's allegation that her statement to SGA that she intended to seek a reasonable accommodation constitutes protected activity under the ADA and Rehabilitation Act.

decrease in subsidy was due to disability rather than change in family size). Here, the only allegation Plaintiff offers in support of a causal connection is the timing of the notice of termination, issued the day after Plaintiff informed SGA staff that she intended to make a reasonable accommodation request. Dkt. 13, ¶¶ 2, 7, 63. But "suspicious timing" by itself is not enough to establish a causal link for a retaliation claim. *See Prince*, 73 F. Supp. 3d at 894 (dismissing claim where plaintiff alleged only suspicious timing); *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (stating that "suspicious timing alone rarely is sufficient" to establish a claim for retaliation).

In fact, despite Plaintiff's conclusory statement that she received the termination notice "solely because she requested disability accommodations," Dkt. 13, ¶ 7, the exhibits attached to the Complaint suggest a different conclusion. The exhibits, including Plaintiff's own declaration, indicate that SGA staff sent the termination notice due to a breach of confidentiality at the GBV hotel location, which they believed was due to Plaintiff's disclosure of the hotel's address. *See* Pl. Decl. ¶ 3 ("SGA case manager . . . sent me a text stating that I was being terminated . . . for an alleged 'major breach of confidentiality . . . .'"); Dkt. 13, Ex. G, Text Messages ("Due to the location being exposed, we have to move forward with removing you from the program . . . ."). In her declaration, Plaintiff does not dispute that, at the very least, the hotel address was exposed to a third-party service provider. Pl. Decl. ¶¶ 3–6. In light of the information contained in the exhibits to the Complaint, Plaintiff's allegations of suspicious timing are insufficient to support the inference that the issuance of the rescinded termination notice was retaliatory. *See Thompson,* 300 F.3d at 753–54 ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations.*") (emphasis in original) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *In re*

13

*Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

### III.     Plaintiff Has Not Alleged Facts Supporting Compensatory Damages.

Plaintiff seeks compensatory damages for her hotel and medical expenses during the time she was experiencing homelessness and the City had not yet placed her in shelter that satisfied her request for a private room with a private bathroom. Dkt. 13, ¶¶ 4, 50, 67.

To recover compensatory damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must show deliberate indifference. *Lacy*, 897 F.3d at 863. The two-part standard for deliberate indifference in the Seventh Circuit is "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (citations omitted). "[T]he deliberate indifference standard is directed to the defendants' state of mind . . . ." *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (emphasis omitted). "In other words, a plaintiff must prove indifference that is a deliberate choice by defendants." *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023) (quoting *Lange*, 28 F.4th at 841). "Mere negligence is insufficient . . . ." *Strominger v. Brock*, 592 F. App'x 508, 512 (7th Cir. 2014).

Plaintiff's Complaint alleges neither knowledge nor a failure to act. First, she does not allege that the City, DFSS, or any delegate agency had actual knowledge of her disabilities or her accommodation request, or that they deliberately chose to deny her an accommodation. She alleges that on April 8, 2026, hospital staff called 311 and that the resulting service request stated only that she "is special needs, she's autistic." Dkt. 13, ¶ 20. If hospital staff conveyed no more than that, the City and its delegate agencies cannot be charged with knowledge that Plaintiff suffers from sensory processing disorder and could not be placed in a congregate setting. Plaintiff next asserts that she "was directed to SPARC" but does not specify by whom. *Id.* ¶ 22. She does not allege that she told anyone at SPARC or any other City employee or representative

14

about her specific disability or disability-related needs. Plaintiff then states that on the night of April 10, she stayed at A Safe Haven Foundation and alleges mistreatment by the staff there; however, she does not allege that such mistreatment was related to her disabilities or that she informed anyone about her disabilities or disability-related needs. *Id.* ¶ 27. The only allegation that any delegate agency had knowledge of Plaintiff's disability is that Thresholds Living Room "acknowledged that Plaintiff required a private, sensory-safe space." *Id.* ¶ 30. But even this allegation does not specify that this acknowledgement was based on knowledge of her disability. And Plaintiff admits that Thresholds failed to accommodate her due to lack of capacity, not out of indifference to her needs. *Id.*

The Complaint and exhibits also show that, the City *did* act, both before and after Plaintiff's June 6 reasonable accommodation request, to find a placement that would meet her needs. An entity that searches multiple sites, investigates an alternative program, and places an individual there has not "fail[ed] to act." *Lacy*, 897 F.3d at 863. Whatever Plaintiff's dissatisfaction with that process, it was not a deliberate choice to deny her an accommodation.

Because she has not alleged sufficient facts to establish deliberate indifference, Plaintiff's request for damages under the ADA and Rehabilitation Act should be dismissed.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court dismiss the Complaint with prejudice and grant such other relief as is just and proper.

15

Date:   August 6, 2026

AMIE L. MEDLEY
amie.medley@cityofchicago.org
HANNAH L. PITCHER
hannah.pitcher@cityofchicago.org
City of Chicago, Department of Law
Constitutional and Commercial
 Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-2742 / 742-6238
*Attorneys for Defendant*

Respectfully submitted,

MARY B. RICHARDSON-LOWRY,

Corporation Counsel for the City of Chicago

By: /s/ *Hannah L. Pitcher*
      Hannah L. Pitcher
      Assistant Corporation Counsel

16