**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESSICA LEHMAN<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>Defendant. | No. 1:26-cv-07202<br><br>Hon. Joan Lefkow<br>Hon. David Weisman |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

The City's homeless services encompass more than simply the coordination and oversight of a network of congregate shelters throughout the City; the Department of Family and Support Services ("DFSS") seeks to support individuals and families experiencing homelessness by connecting them to emergency shelter and housing resources through partnerships with various delegate agencies, service providers and community organizations. That is what occurred in this case—DFSS connected Plaintiff Jessica Lehman with the Gender-Based Violence ("GBV") program, through which she was placed in housing that accommodated her disability-related needs for a private room and bathroom. Plaintiff's accusation that the City has "chosen to operate an inaccessible system," Dkt. 25 at 2, misses the mark—the City operates a system in which individuals who can be accommodated in congregate settings are, and individuals who have specific disability-related needs that make congregate settings inappropriate are accommodated through referral to other resources. Nothing in the Americans with Disabilities Act ("ADA") or Rehabilitation Act requires the City to restructure or fundamentally change its congregate shelter facilities to offer private rooms and bathrooms when those accommodations are available through other programs and resources.

Plaintiff's response to Defendant's motion to dismiss fails to address the deficiencies in her ADA and Rehabilitation Act claims. She has not alleged facts that would support a claim for discrimination or retaliation. And many of her arguments simply are not relevant to the City's motion to dismiss. The Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff Has Not Alleged A Discrimination Claim Under the ADA or Rehabilitation Act.

To state a claim under Title II of the ADA or Section 504 of the Rehabilitation Act, Plaintiff must allege that she is a qualified individual with a disability and that the City "either

failed to reasonably accommodate the plaintiff's disability or intentionally discriminated against the plaintiff because of her disability." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001); 42 USC § 12132 (discrimination under the ADA); 29 USC § 794 (non-discrimination under the Rehabilitation Act).[1] Plaintiff's Complaint does not allege either type of claim, and nothing in her response to Defendant's motion cures that defect. In fact, her response does not address intentional discrimination at all. And her arguments in support of her failure to accommodate claim are unavailing.

**A. Plaintiff Has Not Alleged A Discrimination Claim.**

As explained in Defendant's motion, because Plaintiff has been provided a private room and bathroom through the GBV hotel program, which Plaintiff admits "met her sensory and trauma needs," Dkt. 13, ¶ 12, no failure to accommodate has occurred. In her response, Plaintiff attempts to move the goalposts, relying on her June 6, 2026, accommodation request, in which she requested "a hotel-based, non-congregate placement located downtown or within one mile of an accessible CTA rail line—specifically, River North, Gold Coast, Streeterville, or a comparable central neighborhood." Dkt. 25 at 6. But the fact "[t]hat a plaintiff wants more or different accommodations does not make what he did receive unreasonable." *Igasaki v. Ill. Dept. of Fin. & Prof. Regul.*, 988 F.3d 948, 962 (7th Cir. 2021). Neither the ADA nor the Rehabilitation Act requires the City to fundamentally alter its homeless services by adding private accommodations to congregate shelter locations, launching a hotel voucher program, or finding new funding to provide Plaintiff with a private hotel room in one of her preferred neighborhoods. "The requirement of reasonable accommodation does not entail an obligation to

[1] When analyzing causes of actions arising under both the ADA and the Rehabilitation Act, the Seventh Circuit has treated them the same. *See Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (stating that the Rehabilitation Act "is functionally identical" to the ADA); *Silk v. City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999) (stating that the statutes are "nearly identical").

do everything humanly possible to accommodate a disabled person . . . ." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

To the extent Plaintiff's remaining disability-related issues pertain to the accessibility of the public transit options near her current placement location rather than the provision of appropriate housing accommodations, they are outside the scope of the shelter system or homeless services. *See Berg v. Fla. Dep't of Lab. & Emp. Sec.*, 163 F.3d 1251, 1255 (11th Cir. 1998) (cited in *Bates v. Wis. Dep't of Workforce Dev.*, 375 F. App'x 633, 636 (7th Cir. 2010)) (rejecting Rehabilitation Act claim where disabled plaintiff was denied funds to attend law school because graduate school funding was outside the scope of services). The ADA and Rehabilitation Act require reasonable accommodations to allow individuals with disabilities to access a service or program but do not impose an obligation to meet specific demands "incidental to the core program." *G.P. v. Claypool*, 466 F. Supp. 3d 875, 892 (N.D. Ill. 2020). In *Claypool*, the court limited the program definition of the CPS school system to "the provision of an education" and concluded that the plaintiff was not entitled to attend a specific school location or be assigned a specific teacher, explaining that "[t]eachers are not themselves government programs, services, or activities" but were "incidental to the core program." *Id.*

Here, the purpose of DFSS and the City's homeless services programs is to provide housing to those who need it, and any transit-related concerns are incidental. As explained in an email from Defendant's counsel in this litigation, which Plaintiff cites in her response brief but does not attach, Plaintiff's transit-related needs may be addressed through programs offered by the Chicago Transit Authority. Ex. A.[2] DFSS is required only to ensure access to housing

[2] The City attaches the complete email as an exhibit to this reply to provide the relevant context, even though it is not referenced in the Complaint and, in fact, was sent several weeks after the Complaint was filed. *See L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1

resources; it is not responsible for Plaintiff's access to resources offered by other agencies (such as transit offered by the CTA) or by private entities (such as pharmacies, hospitals, and grocery stores). *See* *Novak v. Hall*, 139 F. Supp. 3d 901, 913 (N.D. Ill. 2015) ("It is incorrect to assume that accommodation under the ADA and Rehabilitation Act means the same thing as a perfect cure for the problem." (quoting *Stewart v. County of Brown*, 86 F.3d 107, 112 (7th Cir. 1996)) (citation modified); *Claypool*, 466 F. Supp. 3d at 887 ("perfect accessibility is not the applicable standard").

Plaintiff's attempt to reframe her ADA and Rehabilitation Act claims as challenging the "methods of administration" of the shelter system does not help her claim. Dkt. 25 at 5–6. The Complaint lists several "Structural Flaws in the 311 Intake System," describing a series of issues Plaintiff encountered while attempting to access the shelter system. Dkt. 13, ¶¶ 42–49. But none of these issues ultimately resulted in a failure to accommodate; instead, they are complaints about the City's alleged failure or refusal to engage in an interactive process. As a threshold matter, it is not entirely clear whether the interactive process is required under Title II of the ADA in the Seventh Circuit. *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1071 (N.D. Ill. 2016) (though "regulations concerning Title I of the ADA require . . . an 'interactive process,'" the plaintiff's claim was "governed by Title II of the ADA, which contains no 'interactive process' requirement"). And Plaintiff agrees that no independent cause of action exists for failure to engage in the interactive process. Dkt. 25 at 10.

---

(7th Cir. 2022) ("[A] party's selection of part of a chain of communication does not prevent the court from considering the entire chain."); *Magellen Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999) (a party "against whom . . . an incomplete picture is painted is entitled to fill in the skeletal outline . . . by adding the missing links") (citing Fed. R. Evid. 106).

In any event, the exhibits attached to the Complaint, as well as those attached to the City's response to Plaintiff's motion for temporary restraining order and this reply, demonstrate that the City and its delegate agencies did engage in an interactive process. Dkt. 13, Ex. C; Dkt. 17, Ex. A. The ADA "envision[s] a flexible, interactive process" that "requires 'a great deal of communication.'" *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000) (citations omitted). Parties must participate in good faith in the process, but the ADA does not "assign responsibility for when the interactive process fails." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Plaintiff has had many communications with individuals at the City and its delegate agencies over the past several months, including most recently with a Deputy Commissioner at DFSS. Dkt. 17, Ex. A.

Plaintiff's assertion that DFSS failed to identify a decision maker or provide a specific timeline for her requests does not indicate a lack of good faith communication. Dkt. 25 at 11. The ADA does not mandate that the person seeking accommodation be allowed to unilaterally dictate who is involved in the interactive process or what questions they must answer. Plaintiff's allegations are simply complaints that the interactive process did not go as she wished or move as quickly as she wanted. But even if the allegations did support the conclusion that the City did not adequately participate in the interactive process, "it is 'not sufficient for [plaintiff] to show that the [defendant] failed to engage in an interactive process or that it caused the interactive process to break down. Rather, [plaintiff] must show that the result of the inadequate interactive process' was a failure to identify an appropriate accommodation." *Novak*, 139 F. Supp. 3d at 915 (alterations in original) (quoting *Rehling*, 207 F.3d at 1015–16). Here, because an appropriate accommodation was identified and provided, Plaintiff's allegations about the inadequacy of the interactive process cannot support a claim.

### B. Plaintiff Has Not Alleged A Claim For Retaliation.

As explained in the City's motion, to allege a claim for retaliation under the ADA and Rehabilitation Act, Plaintiff must allege that she engaged in protected activity, that she suffered an adverse action, and that there was a causal connection between the two. Dkt. 23 at 11; *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 494 (7th Cir. 2014). Plaintiff does not meaningfully respond to the City's arguments regarding prongs two and three of this test. Plaintiff asserts that a rescinded termination notice, such as the one purportedly issued to her on May 29, 2026, and later withdrawn, is an adverse action because "it threatens imminent harm and creates a chilling effect." Dkt. 25 at 13. But to support a retaliation claim, the adverse action must be "materially adverse." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001). Plaintiff does not address the cases cited in the City's brief indicating that some material harm or ill consequences must occur for an action to qualify as adverse. Dkt. 23 at 11 (citing *Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 662 (N.D. Ill. 2020); *Riley v. City of Kokomo*, 909 F.3d 182, 191 (7th Cir. 2018)).

Plaintiff also does not address the City's causation argument: the exhibits attached to the Complaint indicate that the reason for the purported termination notice was a breach of confidentiality regarding the hotel's location rather than retaliation against Plaintiff. As the City argued in its brief, allegations of suspicious timing without more are generally insufficient to support a claim for retaliation. Dkt. 25 at 13 (citing *Tomanovich v. City of Indianapolis*, 457 F.3d. 656, 665 (7th Cir. 2006); *Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010)). And "when a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*." *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original).

Because Plaintiff has not satisfied these elements, her retaliation claim fails.

### C. Plaintiff's Allegations Do Not Support Compensatory Damages.

Plaintiff acknowledges in her response brief that she must show deliberate indifference in order to recover compensatory damages. Dkt. 25 at 12. But again, she fails to identify any person at the City, DFSS, or any delegate agency that knew of her disability and disability-related needs. She argues that "the City" had letters from her doctor but does not say who at the City had them, or even which City department she submitted them to. *Id.* She cites Exhibit C to the Complaint as establishing that DFSS acknowledged her need for a non-congregate placement, but that exhibit is an email from Plaintiff's attorney to Plaintiff relaying that he "heard back from DFSS," who told him they would continue to look for appropriate placements. Dkt. 13 at 45. This email does not support the conclusion that the City knew of Plaintiff's specific disability-related needs. Plaintiff next asserts that "the City offered only medically contraindicated congregate shelters," but as explained above, Plaintiff ultimately was provided with an accommodation that met her needs.[3] Thus, she is not entitled to compensatory damages.

## II. Plaintiff's Additional Arguments Do Not Change This Analysis.

Plaintiff offers a variety of arguments unrelated to the elements of her claims, none of which rescue those claims.

*First*, Plaintiff cites *Olmstead v. L.C.*, 527 U.S. 581 (1999), in support of her theory that the alleged offer of placement in a group home was an illegal attempt to institutionalize her. Dkt. 25 at 4. But Plaintiff does not identify or describe the group home placement that was offered, and cases decided since *Olmstead* have acknowledged that group homes, in which several

[3] Plaintiff also admits in her complaint that on April 20, after she was offered a placement in a shared room, she received another call about a potential placement but declined because she "believed this second call was related to the same inappropriate placement attempt." Dkt. 13, ¶ 35. The City cannot be held responsible for expenses Plaintiff incurred after she rejected a placement based on her assumption that it was the same placement previously offered.

individuals with disabilities live together in a residential setting, can be appropriate community placements.[4] *Ill. League of Advocs. for the Developmentally Disabled v. Ill. Dep't of Hum. Servs.*, 803 F.3d 872, 873–74 (7th Cir. 2015) (describing community-based facilities as "houses or apartments in residential settings that can accommodate between one and eight residents"); *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873–74 (7th Cir. 2013) (plaintiffs were individuals residing in a group home, "[n]one of [whom had] been placed in an institution"). In *Olmstead*, on the other hand, the U.S. Supreme Court considered ADA claims brought by plaintiffs who were confined in a psychiatric unit at a state-run hospital. The Court held that the plaintiffs were entitled under the ADA to be moved into less restrictive community-based placements once their treating professionals determined that would be appropriate. 527 U.S. at 597. Here, Plaintiff does not allege that anyone from the City or its delegate agencies suggested that she should be admitted to a psychiatric ward or otherwise institutionalized, which would be a far cry from the offer of placement in a group home.

*Second*, Plaintiff offers a variety of policy arguments in support of her view that the City should reinstate its COVID-era hotel voucher program. But the ADA does not dictate how municipalities provide reasonable accommodations to their programs and services. *See Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004) ("Title II does not require States to employ any and all means to make [a service or program] accessible to persons with disabilities . . . ."). On the contrary, Title II "provid[es] public entities with the flexibility to choose how best to make

[4] The Chicago Municipal Code defines "Community Home, Group" as "[a] single dwelling unit . . . which is occupied on a permanent basis by a group of not less than 9 and not more than 15 unrelated persons with disabilities in a family-like environment and which may be occupied by paid professional support staff provided by a sponsoring agency." MCC § 17-17-102(A)(3)(b).

access available." *Claypool*, 466 F. Supp. 3d at 886 (quoting *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 986 (9th Cir. 2014)).

*Third*, contrary to Plaintiff's assertion, the City did not argue in its motion to dismiss that it is not obligated to comply with the ADA because its delegate agencies operate the shelters and other homeless services. Plaintiff cites general references to SGA as the City's delegate agency as somehow supporting her argument that the City is trying to evade its ADA obligations. Dkt. 25 at 8 ("[T]he City's Motion repeatedly refers to SGA as 'one of the City's delegate agencies.'"). That SGA is the delegate agency operating the GBV hotel program where Plaintiff is currently placed is simply a factual statement. The City recognizes that "a governmental entity cannot avoid its obligations under [the ADA] by ceding its governmental functions to private entities." *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 232 (7th Cir. 2018).[5] The City did not argue otherwise in its brief.

*Fourth*, Plaintiff's brief purports to respond to "the City's argument that Plaintiff's claims are mooted by her current placement." Dkt. 25 at 14. But the City did not argue mootness in its motion to dismiss. The City's argument is that because a reasonable accommodation was identified and provided to Plaintiff, she has no claim under the ADA or Rehabilitation Act. The Court need not undertake any mootness analysis in ruling on the motion to dismiss.

---

[5] This is not to say that the City necessarily accepts responsibility for all actions of its delegate agencies or their employees. In fact, though the Seventh Circuit has not addressed the issue, some District Courts within the circuit have held that "an agency cannot be liable for a Title II violation under a theory of respondeat superior liability." *Ravenna v. Vill. of Skokie*, 388 F. Supp. 3d 999, 1005–06 (N.D. Ill. 2019); *see also Royer v. City of Elkhart*, No. 3:22-CV-254 JD, 2022 WL 17600377, at *16 (N.D. Ind. Dec. 13, 2022) ("[T]he Court finds that a claim under Title II cannot be brought using a theory of vicarious liability.").

## CONCLUSION

WHEREFORE, for the reasons explained above and the memorandum in support of Defendant's motion to dismiss, Defendant respectfully requests that the Court dismiss the Complaint with prejudice and grant such other relief as is just and proper.

Date: September 15, 2026

Respectfully submitted,

MARY B. RICHARDSON-LOWRY,

Corporation Counsel for the City of Chicago

By: /s/ *Amie L. Medley*
Amie L. Medley
Supervising Assistant Corporation Counsel

AMIE L. MEDLEY
amie.medley@cityofchicago.org
HANNAH L. PITCHER
hannah.pitcher@cityofchicago.org
City of Chicago, Department of Law
Constitutional and Commercial
Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 744-2742 / 742-6238
*Attorneys for Defendant*

# Exhibit A

## Amie Medley

**From:** Amie Medley
**Sent:** Friday, July 31, 2026 12:47 PM
**To:** jessica@jessicaj.studio
**Subject:** Lehman v. City of Chicago | 26-cv-07202

Jessica,

I am writing in response to your emails of last week and yesterday after coordinating with the various individuals involved at DFSS and its delegate agencies.

DFSS and SGA have been working with you to locate a short-term housing arrangement for you while you work toward obtaining stable long-term housing. However, the City does not agree that an alternative location beyond that already provided by SGA is required by the ADA, Rehabilitation Act, or IHRA. DFSS is not required to provide resources or accommodations that it does not already offer through its programs or services. To do so would "fundamentally alter the nature of the service, program or activity" offered by the shelter system and the GBV hotel program, which is not required under any applicable statute. *Erdman v. City of Ft. Atkinson*, 84 F.3d 960, 962 (7th Cir. 1996) ("An accommodation is unreasonable if it . . . requires a 'fundamental alteration in the nature of a program.'") (quoting *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 410 (1979)). As you are already aware and alleged in your complaint, the City's shelter system has very few private rooms, none of which are located in the vicinity of downtown. And the GBV hotel program has only two service providers and two locations. I have confirmed with DFSS that it no longer offers hotel vouchers as a means of providing shelter to individuals. The City is not required to procure new and different hotel space or to reinstate the hotel voucher system discontinued after the COVID pandemic in order to provide you with an alternative location.

At this point, DFSS and the City have taken all reasonable steps to try and satisfy your requests. Through the GBV program, you have been provided with a private room and bathroom with 24-hour access as you requested. SGA switched your case manager at your request and worked with you to ensure that you could receive mail and meet with service providers at the hotel. As Laura mentioned in her email yesterday, the CTA paratransit program is available as an option to address your transit-related needs. But DFSS is unable to offer a different location through its current programs.

Regards,

**Amie L. Medley** (she/her)
Senior Counsel | Constitutional & Commercial Litigation Division
City of Chicago Department of Law
2 North LaSalle, Suite 520

Chicago, IL 60602
312.744.2742
www.cityofchicago.org/law